ASSET PURCHASE AND SALE AGREEMENT

BETWEEN

STRYKER ENERGY, LLC,
as Seller,

AND

NUCOMER ENERGY, LLC,
as Buyer

Effective
December 1, 2016

EXHIBIT B

## Table of Contents

Page

ARTICLE I  DEFINITIONS AND INTERPRETATION ......................................................1

ARTICLE II  ASSIGNED INTERESTS................................................................................1
 2.1 Purchase and Sale ......................................................................................1
 2.2 Excluded Assets .........................................................................................2
 2.3 Consideration .............................................................................................2
 2.4 Assumed Liabilities and Prospect Capital ORRI........................................3
 2.5 Retained Liabilities ....................................................................................4
 2.6 Allocation of Consideration ......................................................................5

ARTICLE III SELLER'S REPRESENTATIONS AND WARRANTIES ...............................6
 3.1 Due Organization .......................................................................................6
 3.2 Due Authorizations; Enforceability ...........................................................6
 3.3 Non-Contravention .....................................................................................6
 3.4 Seller's Litigation.......................................................................................6
 3.5 Governmental Approvals ............................................................................6
 3.6 Taxes ..........................................................................................................7
 3.7 Compliance with Laws; Permits ................................................................7
 3.8 Leases .........................................................................................................7
 3.9 Contracts ....................................................................................................7
 3.10 AFEs; Cash Calls .......................................................................................8
 3.11 Title Matters ...............................................................................................8
 3.12 No Brokers .................................................................................................8
 3.13 No Bankruptcy............................................................................................8
 3.14 Seller's Disclaimers ...................................................................................8

ARTICLE IV BUYER'S REPRESENTATIONS AND WARRANTIES ..............................9
 4.1 Due Organization .......................................................................................9
 4.2 Due Authorization; Enforceability.............................................................9
 4.3 Non-Contravention .....................................................................................9
 4.4 Litigation....................................................................................................9
 4.5 Governmental and Third Person Consents .................................................9
 4.6 No Brokers ...............................................................................................10
 4.7 No Bankruptcy..........................................................................................10
 4.8 Acquisition for Investment .......................................................................10
 4.9 Sophistication...........................................................................................10

ARTICLE V  CONDITIONS PRECEDENT; TERMINATION; REMEDIES....................10
 5.1 Conditions Precedent to Seller's Obligation to Close................................10
 5.2 Conditions Precedent to Buyer's Obligation to Close ...............................11

ARTICLE VI CLOSING .................................................................................................11
 6.1 Closing .....................................................................................................11

|  | 6.2 | Actions at the Closing | 11 |

| ARTICLE VII | | POST CLOSING MATTERS | 12 |
|  | 7.1 | Records | 12 |
|  | 7.2 | Further Cooperation | 12 |

| ARTICLE VIII | | SURVIVAL; INDEMNIFICATION | 12 |
|  | 8.1 | Survival | 12 |
|  | 8.2 | Cumulative Remedies | 12 |
|  | 8.3 | Indemnities of Buyer | 12 |
|  | 8.4 | Indemnities of Seller | 13 |
|  | 8.5 | Limitations on Indemnities | 13 |
|  | 8.6 | Indemnification Procedures | 13 |
|  | 8.7 | Limitation on Damages | 13 |

| ARTICLE IX | | MISCELLANEOUS | 14 |
|  | 9.1 | Schedules and Exhibits | 14 |
|  | 9.2 | Expenses | 14 |
|  | 9.3 | Assignment | 14 |
|  | 9.4 | Notices | 14 |
|  | 9.5 | Entire Agreement; Conflicts | 15 |
|  | 9.6 | Amendments | 15 |
|  | 9.7 | Waiver; Rights Cumulative | 15 |
|  | 9.8 | Governing Law; Jurisdiction; Venue | 15 |
|  | 9.9 | Dispute Resolution | 16 |
|  | 9.10 | Severability | 18 |
|  | 9.11 | Allocation and Proration of Taxes | 18 |
|  | 9.12 | Counterparts | 18 |
|  | 9.13 | Nonrepresentation; Independent Legal Counsel | 18 |

## SCHEDULES AND EXHIBITS

| Schedule 1 | - | Defined Terms |
| Schedule 2 | - | Amegy Security Documents |

| Exhibit A | - | Description of the Assets |
| Exhibit A-1 | - | Leases and Wells; Units |
| Exhibit B | - | Form of Conveyance |

## ASSET PURCHASE AND SALE AGREEMENT

This ASSET PURCHASE AND SALE AGREEMENT (as amended, supplemented, restated or otherwise modified in accordance with applicable provisions hereof, this "Agreement") is dated effective as of 7:00 a.m., Eastern Standard Time, on the 1st day of December, 2016 (the "Effective Time") between STRYKER ENERGY, LLC, an Ohio limited liability company ("Seller"), and NUCOMER ENERGY, LLC, a Pennsylvania limited liability company ("Buyer"). Seller and Buyer may also be referred to herein, individually, as a "Party" and, collectively, as the "Parties."

## RECITALS

WHEREAS, Seller is the owner of record of certain interests in oil and gas leases, oil and gas wells and other oil and gas properties;

WHEREAS, Seller desires to sell and convey, and Buyer desires to purchase and pay for, all of Seller's rights, titles and interests in and to such oil and gas leases, oil and gas wells and other oil and gas properties of Seller;

WHEREAS, the Parties intend that the Assets be transferred to Buyer free and clear of any and all Liens, other Claims and other encumbrances (including Liens, other Claims and other encumbrances held or asserted by Prospect Capital), other than Permitted Encumbrances (including Liens, other Claims and other encumbrances held or asserted by Amegy, whether under the Amegy Security Documents or otherwise); and

WHEREAS, pursuant to the Amegy Note PSA, Nucomer will acquire from Amegy, among other interests, the Amegy Note and the right to payment of the indebtedness of Seller to Amegy evidenced thereby;

NOW, THEREFORE, for and in consideration of the mutual promises contained herein, the benefits to be derived by each Party hereunder and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller and Buyer agree as follows:

## ARTICLE I
## DEFINITIONS AND INTERPRETATION

In addition to the terms defined in the introductory paragraph of this Agreement, for purposes hereof, the capitalized expressions and terms set forth in Part 1 of Schedule 1 shall have the meanings set forth therein, unless expressly indicated otherwise. Other terms may be defined elsewhere in this Agreement and shall, for purposes hereof, have the meanings so specified, unless expressly indicated otherwise. Certain rules of interpretation applicable to this Agreement are set forth in Part 2 of Schedule 1.

## ARTICLE II
## ASSIGNED INTERESTS

2.1    Purchase and Sale. Subject to the terms hereof, Seller agrees to assign, sell and convey to Buyer, and Buyer agrees to assume, purchase and pay for, the Assets. The Assets will

be conveyed to Buyer at the closing of the transaction contemplated hereby (the "Closing") pursuant to the execution and delivery of an Assignment of Oil and Gas Leases, Wellbores and Portion of Herkimer Escrow, Bill of Sale and Conveyance substantially in the form of Exhibit B (the "Conveyance"). The Conveyance, and the assumption by Buyer of the Assumed Liabilities, in each case shall be effective as of the Effective Time, except for the assumption by Buyer of certain of the Assumed Liabilities as specified in Section 2.4.

      2.2    Excluded Assets.  Seller excepts, reserves and retains to itself the following properties and assets (collectively, the "Excluded Assets"):

      (a)    all financial, legal, and tax records of Seller, excluding all financial records that are directly related to the ownership and operation of the Assets;

      (b)    all deposits, cash, checks in process of collection, cash equivalents, and funds attributable to the Assets for the period prior to the Effective Time;

      (c)    all Hydrocarbons produced from or allocable to the Assets prior to the Effective Time, including all Hydrocarbons produced from or allocable to the Assets existing in pipelines or storage facilities upstream of the delivery points to the relevant purchasers as of the Effective Time;

      (d)    all rights, interests and Claims that Seller may have under any policy of insurance or indemnity, any surety bond, any insurance or condemnation proceeds or any recoveries from third Persons relating, in each case, to death, personal injury, property damage or casualty loss affecting or pertaining to some or all of the Assets that arise out of or result from acts, omissions or events occurring prior to the Effective Time;

      (e)    all right, title and interest of Seller to funds in the Herkimer Escrow as of the Effective Time, but only up to $50,000, in the aggregate, and only if and when received by Seller (or by Buyer and due to Seller), such amount to be paid to Seller by Buyer or retained by Seller prior to the Effective Time as provided in the last paragraph of Section 2.4;

      (f)    all Claims, whether arising in contract, in tort, under any agreement of indemnity or by operation of Law, and whether or not such Claim is asserted as of the Effective Time, that Seller may have against any Person arising out of acts, omissions or events (including injury to or death of Persons or loss or destruction of or damage to property) relating in any way to the Assets that occurred prior to the Effective Time; and

      (g)    all other interests, rights, property, and assets of Seller of every kind and character not located on or used in connection with the Assets or otherwise expressly included in the definition of the Assets.

      2.3    Consideration.  Reference is made to the Credit Agreement and the Amegy Note. As consideration for the Assets, Buyer shall, immediately following its acquisition of the Amegy Note pursuant to the Amegy Note PSA, grant to Seller a credit of $1,000,000 against the principal balance owing on the Amegy Note as of the time of the acquisition by Buyer of the Amegy Note.

2.4    <u>Assumed Liabilities and Prospect Capital ORRI</u>.  Subject to the terms of this Agreement, Buyer shall, upon the Closing, be deemed to have assumed and agreed to pay, perform, and discharge the following duties, obligations, responsibilities, and Liabilities (collectively, the "<u>Assumed Liabilities</u>"):

(a)    the performance of the terms, conditions, and covenants of, and the discharge of the share attributable to the interests of Seller of the duties, obligations, and Liabilities (other than obligations or Liabilities for the payment of money arising prior to the Effective Time or existing as of the Effective Time, as the case may be) with respect to, the Assets (but not the Excluded Assets) for the period after the Effective Time;

(b)    all obligations and Liabilities of Seller for the payment of money with respect to the Assets (including the payment of Seller's share of all costs and expenses incurred in connection with the Assets and the payment of Seller's share of all Lease Burdens (including the Prospect Capital ORRI) on production from or allocable to the Leases, the Units and the Wells, as well as all Lease Maintenance Payments under the terms of the Leases) for the period after the Effective Time (other than Property-Related Taxes and Production Taxes, which are allocated between Seller and Buyer in <u>Section 9.11</u>);

(c)    to the extent not assumed by Buyer pursuant to any other clause of this listing of the Assumed Liabilities, the terms, conditions, and covenants of the mortgagor, the secured party or the judgment creditor, as the case may be, under the Amegy Security Documents, but only to the extent of Liabilities arising after the Effective Time;

(d)    all Property-Related Taxes and Production Taxes for which Buyer is responsible pursuant to <u>Section 9.11</u>;

(e)    all obligations of Seller for the plugging and abandonment of all Wells included in the Assets (including the performance of all related salvage of Personal Property, site clearance, and surface restoration operations) arising from or pursuant to: applicable Law, the terms of the Leases (to the extent applicable), and/or the terms of all applicable Permits and Contracts;

(f)    all Claims and Liabilities (including Claims and Liabilities for injury to or death of any Person, Persons, or other living things, or loss or destruction of or damage to property) arising out of, resulting from or relating in any way to the environmental status of the Assets, or any portion thereof, to the extent such Claim or Liability, or the acts, omissions, events, or conditions giving rise thereto, occur after the Effective Time;

(g)    all Claims and Liabilities, in addition to those described in <u>Section 2.4(e)</u>, and whether arising in contract, in tort, under any agreement of indemnity or by operation of Law, asserted against or suffered by Buyer or Seller that relate in any way to the Assets (including injury to or death of any Person, Persons or other living things, or loss or destruction of or damage to property), to extent that the acts, omissions, events or conditions giving rise thereto occur after the Effective Time;

(h)    all obligations of Seller, if any, owed to other Persons with respect to Imbalances arising after the Effective Time;

(i)     all Claims and Liabilities relating to the payment of taxes (including interest, penalties and additions to tax) for which Buyer has agreed to be responsible under the terms hereof; and

(j)     all other duties, obligations, responsibilities, Liabilities, and Claims, whether in contract, in tort, or arising by operation of Law, that arise out of events, occurrences or obligations associated with the ownership or operation of the Assets after the Effective Time.

For the avoidance of doubt, notwithstanding anything to the contrary in this Agreement, it is expressly understood between the Parties that Buyer is acquiring only the Assets (including the Wells, the Leases, any listed rights of way and the Herkimer Escrow interest not constituting a part of the Excluded Assets) identified herein.  Furthermore, except as provided (i) in clause (e) of the definition of Assumed Liabilities above in this Section 2.4 and (ii) in the immediately following paragraph.  Buyer assumes no responsibility for Claims, debts, Liens, or any other Liabilities of Seller attributable to the Assets for the period of time prior to the Effective Time, including any Claims of Seller against Amegy.

Also, for the avoidance of doubt, notwithstanding anything to the contrary in this Agreement (including the immediately preceding paragraph of this Section 2.4), Buyer expressly acknowledges that the Prospect Capital ORRI constitutes a Lease Burden and Buyer agrees that it is assuming the obligation to account to Prospect Capital for revenues accruing to the Prospect Capital ORRI with respect to production of Hydrocarbons from the Wells, including the Herkimer Wells, after the Effective Time.  Furthermore, Buyer acknowledges that, in connection with its acquisition, pursuant to this Agreement, of rights to funds in the Herkimer Escrow due to Seller, Buyer shall pay to Seller, unless such amount has been received directly by Seller from the Herkimer Escrow, the first $50,000 received by Buyer from the Herkimer Escrow and shall pay to Prospect Capital (in respect of the Prospect Capital ORRI accruing prior to the Effective Time) the next $86,853 received by Buyer from the Herkimer Escrow.  In furtherance of the foregoing sentence, should Seller receive directly funds in the Herkimer Escrow not constituting a part of the Excluded Assets, Seller shall promptly remit the amount of such funds to Buyer to enable Buyer to account to Prospect Capital as required by the immediately preceding sentence.

2.5     Retained Liabilities.  Subject to the terms of this Agreement, then as between Seller and Buyer, Seller shall be deemed to have retained and agreed to pay, perform, and discharge, and to remain liable for, the following duties, obligations, responsibilities, and Liabilities (collectively, the "Retained Liabilities"):

(a)     the performance of the terms, conditions, and covenants of, and the discharge of the share attributable to the interests of Seller of the duties, obligations, and Liabilities (other than obligations or Liabilities for the payment of money arising after the Effective Time) with respect to the Assets for the period prior to the Effective Time;

(b)     all obligations and Liabilities of Seller for the payment of money with respect to the Assets (including the payment of Seller's share of all costs and expenses incurred in connection with the Assets and the payment of Seller's share of all Lease Burdens (including the Prospect Capital ORRI) on production from or allocable to the Leases, Units, and Wells, as well as all Lease Maintenance Payments under the terms of the Leases) attributable to the period

- 4 -

prior to the Effective Time (other than Property-Related Taxes and Production Taxes, which are allocated between Seller and Buyer in Section 9.11);

(c)     all obligations of Seller, if any, owed to other Persons with respect to Imbalances existing as of the Effective Time;

(d)     all obligations and Liabilities of Seller with respect to the performance of the terms, conditions, and covenants of, and the discharge of the share attributable to the interests of Seller of the duties, obligations, and Liabilities with respect to, any assets or business of Seller other than as related to the Assets;

(e)     Seller's obligations under this Agreement;

(f)     to the extent not retained by Seller pursuant to any other clause of this listing of the Retained Liabilities, the terms, conditions, and covenants of the mortgagor, the secured party or the judgment creditor, as the case may be, under the Amegy Security Documents, but only to the extent of Liabilities arising prior to the Effective Time;

(g)     all Property-Related Taxes and Production Taxes for which Seller is responsible pursuant to Section 9.11;

(h)     except for Claims and Liabilities constituting Assumed Liabilities, all Claims and Liabilities, whether arising in contract, in tort, under any agreement of indemnity or by operation of Law, against or suffered by Seller that relate in any way to the Assets (including injury to or death of any Person, Persons or other living things, or loss or destruction of or damage to property affecting or relating to the Assets, to the extent that the acts, omissions, events or conditions giving rise thereto arose or occurred prior to the Effective Time, regardless of when such Claim or Liability is asserted;

(i)     all Claims (if any) of third Persons, whether as the result of audits or otherwise, to refunds, adjustments, settlements of disputes or other amounts of any kind due under the terms of the Leases or the Contracts and attributable to the period prior to the Effective Time;

(j)     any litigation or other Claims against Seller, its business or the Assets, but excluding any to the extent constituting an Assumed Liability;

(k)     except as assumed by Buyer in Section 2.4, all indebtedness of Seller, whether or not secured by all or any portion of the Assets; and

(l)     all other duties, obligations, Claims and Liabilities, whether arising in contract, in tort, under any agreement of indemnity, or by operation of Law, that arise out of events, occurrences or obligations associated with the ownership or operation of the Assets for the period prior to the Effective Time.

2.6     Allocation of Consideration.  If requested by Buyer or Seller no later than 30 days after the Closing Date, Buyer and Seller shall mutually agree, in writing, upon an allocation of the Purchase Price among the Assets for financial accounting and tax purposes in accordance with Section 1060 of the Code.  Buyer and Seller shall, thereafter, each file a Form 8594 (Asset

Acquisition Statement Under Section 1060) on a timely basis, reporting the allocation of the Purchase Price for the Assets consistent this <u>Section 2.6</u>.

## ARTICLE III
## SELLER'S REPRESENTATIONS AND WARRANTIES

Seller represents and warrants to Buyer, as of the Effective Time and as of the Closing Date, as follows:

3.1     <u>Due Organization</u>.   Seller is a limited liability company duly formed, validly existing and in good standing under the Laws of the State of Ohio and is qualified to do business as a foreign limited liability company and is in good standing under the Laws of the State of New York and the Laws of the State of Pennsylvania.   Seller has all requisite power and authority to own and operate the Assets.

3.2     <u>Due Authorizations; Enforceability</u>.   Seller has full capacity, power and authority to enter into and perform this Agreement and the documents executed in connection herewith and the transactions contemplated herein and therein.   The execution, delivery and performance by Seller of this Agreement and the documents executed in connection herewith have been duly and validly authorized and approved by all necessary limited liability company action on the part of Seller, and this Agreement and the documents executed in connection herewith are, or upon their execution and delivery will be, the valid and binding obligations of Seller enforceable against Seller in accordance with their respective terms, subject to the effects of bankruptcy, insolvency, reorganization, moratorium and similar Laws, as well as to principles of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law).

3.3     <u>Non-Contravention</u>.   The execution, delivery and performance by Seller of this Agreement and the documents executed in connection herewith and the consummation of the transactions contemplated herein and therein will not (a) conflict with or result in a breach of any provision of the organizational or governing documents of Seller, (b) result in a default or the creation of any Lien or give rise to any right of termination, cancellation or acceleration under any of the terms of any credit agreement, note, bond, mortgage, indenture, license or other agreement to which Seller is a party or by which Seller or any of its property may be bound, except for requirements for third party consents and waivers (satisfaction of such requirements being waived by Buyer's execution of this Agreement) or (c) violate any order, writ, injunction, judgment, decree or Law applicable to Seller or its property.

3.4     <u>Seller's Litigation</u>.   There is no Claim by any Person or Governmental Authority (including expropriation or forfeiture proceedings), and no legal, administrative, or arbitration proceeding is pending or, to Seller's Knowledge, threatened against Seller or the Assets, or to which Seller is a party, that reasonably may be expected to (a) challenge the title of Seller to any of the Assets or (b) otherwise have a Material Adverse Effect.

3.5     <u>Governmental Approvals</u>.   Except for approvals by Governmental Authorities customarily obtained after the Closing, if any, no authorization, consent, approval, exemption, franchise, permit or license of, or filing with, any Governmental Authority is required to authorize, or is otherwise required by any Governmental Authority in connection with, the valid execution and delivery by Seller of this Agreement or the documents executed in connection

- 6 -

herewith, the transfer of the Assets to Buyer or the performance by Seller of its other obligations hereunder or thereunder.

3.6     Taxes.  Except with respect to those taxes prorated between Seller and Buyer as provided in Section 9.11, during the period of Seller's ownership of the Assets, Seller has filed all returns it was required to file in connection with all Property-Related Taxes and Production Taxes imposed upon or assessed with respect to, measured by, charged against, or attributable to the Assets or Hydrocarbon production therefrom or allocable thereto and Seller has paid all Property-Related Taxes and Production Taxes shown on such returns as owing.  The Assets are not otherwise subject to, for federal income tax purposes, a partnership among Seller and any other Person for which a partnership income tax return is required to be filed under Subchapter K of Chapter 1 of Subtitle A of the Code (other than a partnership for which an election to be excluded from such provisions is in effect pursuant to the provisions of Section 761 of the Code and the regulations thereunder).

3.7     Compliance with Laws; Permits.  During the period of Seller's ownership of the Assets, Seller, and to Seller's Knowledge, the operator(s) of the Wells have complied in all material respects with all Laws and all Permits required under all Laws, applicable, in each case, to the ownership and operation of the Wells and the production, marketing and disposition of Hydrocarbons therefrom (excluding Laws related to taxes, as to which Seller's sole representations and warranties are set forth in Section 3.6), except for prior instances of non-compliance that have been fully and finally remedied or resolved to the satisfaction of all Governmental Authorities with jurisdiction over such matters.  Seller or, to Seller's Knowledge, each operator of the Wells, as applicable, has all such Permits required in connection with the ownership and operation of the relevant Wells, and, to Seller's Knowledge, all of such Permits and filings are in full force and effect.  Neither Seller nor, to Seller's Knowledge, any other Person has received notice from any Governmental Authority or other Person that any such applicable Law or Permit has been violated or not complied with by Seller or any other Person.

3.8     Leases.  To Seller's Knowledge, each Lease is in full force and effect.  Neither Seller nor, to Seller's Knowledge, any other Person owning an interest in or serving as operator of a Lease is in material breach or material default, and there has occurred no event, fact or circumstance that, with the lapse of time or the giving of notice or both, would constitute such a material breach or material default by Seller or such other Person, with respect to any terms of any Lease.  No lessor under any Lease has given or, to Seller's Knowledge, threatened to give notice of any action to terminate, cancel, rescind, repudiate or procure a judicial reformation of any Lease or any provision thereof.

3.9     Contracts.     Access to all material contracts, agreements, instruments, or documents that affect the Assets to which Seller is a party, or that are binding on the Assets (the "Contracts"), has been provided to Buyer.  With respect to the Contracts:  (a) to Seller's Knowledge, all Contracts are in full force and effect; (b) Seller is not in material breach or material default, and there has occurred no event, fact, or circumstance that, with the lapse of time or the giving of notice or both, would constitute such a material breach or material default by Seller, with respect to the terms of any Contract; (c) to Seller's Knowledge, no other Person is in material breach or material default with respect to the terms of any Contract, except the dispute between Seller and Norse Energy, LLC, a New York limited liability company, under the 2010 Drilling Program Agreement dated October 18, 2010 between Norse Energy, LLC and

Seller; and (d) neither Seller nor, to Seller's Knowledge, any other party to any Contract has given or threatened to give notice of any action to terminate, cancel, rescind or procure a judicial reformation of any Contract or any provision thereof.

      3.10   <u>AFEs; Cash Calls</u>.  There are no outstanding authorizations for expenditures or other commitments to make capital expenditures relating to any portion of the Leases, Units or Wells that will be binding on Buyer after the Closing Date.  There are no past due cash calls.

      3.11   <u>Title Matters</u>.  Seller has good and indefeasible title to the Assets, free and clear of Liens, except for (a) Permitted Encumbrances (including Liens, other Claims, and other encumbrances held or asserted by Amegy, whether under the Amegy Security Documents or otherwise) and (b) liens which have been or will be released prior to or substantially contemporaneously with the Closing and for which releases will be provided to Buyer on or promptly following the Closing Date.

      3.12   <u>No Brokers</u>.  Seller has not engaged any financial advisor, broker, agent, or finder, or incurred any Liability, contingent or otherwise, in favor of any such Person relating to the transaction contemplated by this Agreement and for which Buyer is or will become, upon the Closing, liable.

      3.13   <u>No Bankruptcy</u>.  There are no bankruptcy, insolvency or other reorganization proceedings pending, being contemplated by or, to Seller's Knowledge, threatened against Seller.

      3.14   <u>Seller's Disclaimers</u>.  To the extent required by applicable Law to be operative, the disclaimers of certain warranties contained in this <u>Section 3.14</u> are "conspicuous disclaimers" for purposes of any applicable Law.  **Except for the representations and warranties of Seller set forth in this <u>Article III</u> and the indemnities set forth in <u>Article X</u>, and except for the special warranty of title contained in the Conveyance, Buyer agrees that Seller is conveying the Assets without representation or warranty, either express or implied at common law, by statute or otherwise (all of which Seller hereby disclaims), relating to (a) title, (b) the operating condition of the Wells and the Personal Property, (c) merchantability, design or quality of the Wells and the Personal Property, (d) fitness of the Wells and the Personal Property for any particular purpose, (e) absence of latent defects, (f) environmental condition of the Assets, (g) quantity, recoverability or value of Hydrocarbon reserves or (h) any other matter whatsoever, it being understood that, except as otherwise provided in this Agreement and the Conveyance, Seller is conveying to Buyer, and Buyer is accepting, the Assets "as is," "where is," and "with all faults," and Buyer is assuming all risk with respect to the Assets.**

## ARTICLE IV
## BUYER'S REPRESENTATIONS AND WARRANTIES

Buyer represents and warrants to Seller, as of the Effective Time and as of the Closing Date, as follows:

4.1     Due Organization.  Buyer is a limited liability company duly formed, validly existing and in good standing under the Laws of the State of Pennsylvania and is qualified to do business as a foreign limited liability company and is in good standing under the Laws of each state where the character of Buyer's business and operations require such qualification.  Buyer has all requisite power and authority to own and operate its property and to carry on its business as now conducted.

4.2     Due Authorization; Enforceability.  Buyer has full capacity, power and authority to enter into and perform this Agreement, the documents executed in connection herewith and the transactions contemplated herein and therein.  The execution, delivery and performance by Buyer of this Agreement and the documents executed in connection herewith have been duly and validly authorized and approved by all necessary limited liability company action of Buyer.  This Agreement and the documents executed in connection herewith are, or upon their execution and delivery will be, the valid and binding obligations of Buyer enforceable against Buyer in accordance with their respective terms, subject to the effects of bankruptcy, insolvency, reorganization, moratorium and similar Laws, as well as to principles of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law).

4.3     Non-Contravention.  The execution, delivery and performance by Buyer of this Agreement and the documents executed in connection herewith and the consummation of the transactions contemplated herein and therein will not (a) conflict with or result in a breach of any provision of the organizational or governing documents of Buyer, (b) result in a default or the creation of any Lien or give rise to any right of termination, cancellation or acceleration under any of the terms of any credit agreement, note, bond, mortgage, indenture, license or other agreement to which Buyer is a party or by which Buyer or any of its property may be bound or (c) violate any order, writ, injunction, judgment, decree or Law applicable to Buyer or its property.

4.4     Litigation.  There is no Claim by any Person or Governmental Authority, and no legal, administrative or arbitration proceeding is pending or, to Buyer's Knowledge, threatened against Buyer, or to which Buyer is a party, that reasonably may be expected to adversely affect the ability of Buyer to consummate the transactions contemplated in this Agreement or the documents executed in connection herewith.

4.5     Governmental and Third Person Consents.  Except for approvals by Governmental Authorities customarily obtained after the Closing, no authorization, consent, approval, exemption, franchise, permit or license of, or filing with, any Governmental Authority or any other Person is required to authorize, or is otherwise required in connection with, the valid execution and delivery by Buyer of this Agreement or the documents executed in connection herewith or the performance by Buyer of its obligations hereunder or thereunder.

- 9 -

4.6    No Brokers.   Buyer has not engaged any financial advisor, broker, agent, or finder, or incurred any Liability, contingent or otherwise, in favor of any such Person relating to the transaction contemplated by this Agreement and for which Seller is or will become, upon the Closing, liable.

4.7    No Bankruptcy.   There are no bankruptcy, insolvency, reorganization or arrangement proceedings pending, being contemplated by or, to Buyer's Knowledge, threatened against Buyer.

4.8    Acquisition for Investment.   Buyer is acquiring the Assets for its own account, for investment, and not with a view to, or for offer or resale in connection with, a distribution thereof (including the transfer of fractional undivided interests therein) within the meaning of the Securities Act of 1933, as amended, and the rules and regulations promulgated thereunder, or a distribution thereof in violation of any applicable securities Law.   If, in the future, Buyer sells, transfers or otherwise disposes of its share of the Assets, or any portion thereof, or any fractional undivided interest therein, Buyer will do so in full compliance with any applicable securities Laws.

4.9    Sophistication.   Buyer is knowledgeable of the oil and gas business and of the usual and customary practices of producers such as Seller and has had access to the officers and employees of Seller and the books, records and files of Seller relating to the Assets.   In making the decision to enter into this Agreement and consummate the transactions contemplated hereby, Buyer has relied solely on its own independent due diligence investigation of the Assets and upon the representations and warranties made by Seller in Article III.

## ARTICLE V
## CONDITIONS PRECEDENT; TERMINATION; REMEDIES

5.1    Conditions Precedent to Seller's Obligation to Close.   All obligations of Seller under this Agreement are subject, at the option of Seller, to the fulfillment, on or prior to the Closing Date, of each of the following conditions:

(a)    each and every representation and warranty of Buyer under this Agreement shall be true and accurate in all material respects (or in all respects, in the cases of representations and warranties qualified by materiality) as of the Execution Date and made again at and as of the Closing Date;

(b)    Buyer shall have performed and satisfied, in all material respects, each and every covenant, agreement and condition required by this Agreement to be performed or satisfied, executed and delivered all documents required to be executed and delivered and otherwise taken all actions required to be taken by Buyer pursuant to this Agreement;

(c)    no suit, action or other proceeding shall be pending or threatened before any court or arbitration tribunal or any Governmental Authority seeking to enjoin, restrain, prohibit, or declare illegal, or seeking substantial damages in connection with, the transaction contemplated in this Agreement; and

(d)     no order shall have been entered by any court, arbitration tribunal, or Governmental Authority against Seller, Buyer or any of their respective Affiliates that restrains, enjoins, or prohibits the transactions contemplated in this Agreement.

5.2     <u>Conditions Precedent to Buyer's Obligation to Close</u>.  All obligations of Buyer under this Agreement are subject, at Buyer's option, to the fulfillment, on or prior to the Closing Date, of each of the following conditions:

(a)     each and every representation and warranty of Seller under this Agreement shall be true and accurate in all material respects (or in all respects, in the cases of representations and warranties qualified by materiality) as of the date when made and again at and as of the Closing Date;

(b)     Seller shall have performed and satisfied, in all material respects, each and every covenant, agreement and condition required by this Agreement to be performed or satisfied, executed and delivered all documents required to be executed and delivered and otherwise taken all actions required to be taken, in each case by Seller on or prior to the Closing Date;

(c)     no suit, action or other proceeding shall be pending or threatened before any court or arbitration tribunal or any Governmental Authority seeking to restrain, prohibit, or declare illegal, or seeking substantial damages in connection with, the transaction contemplated in this Agreement;

(d)     no order shall have been entered by any court, arbitration tribunal, or Governmental Authority against Seller, Buyer or any of their respective Affiliates that restrains, enjoins, or prohibits the transaction contemplated in this Agreement.

## ARTICLE VI
## <u>CLOSING</u>

6.1     <u>Closing</u>.  The Closing shall take place at the Houston, Texas offices of Jackson Walker L.L.P., counsel to Amegy, through the remote exchange of signatures and other deliverables, on November 3, 2016, or such other date as Buyer and Seller may mutually agree upon (the "<u>Closing Date</u>").

6.2     <u>Actions at the Closing</u>.  At the Closing, Seller and Buyer shall take, or cause to be taken, the following actions:

(a)     Seller and Buyer shall (i) execute and deliver to each other multiple counterparts of the Conveyance, as requested by the other Party, including sufficient numbers of executed and acknowledged original counterparts to facilitate recording in all relevant jurisdictions;

(b)     Seller shall deliver to Buyer documentation, duly executed and, where applicable, acknowledged by Prospect Capital, releasing all Liens, other Claims and other encumbrances known by Seller to be held by Prospect against any or all of the Assets; and

(c)     Seller and Buyer shall execute and deliver such other documents and take such other actions as are provided for elsewhere in this Agreement or as may be necessary to consummate the transactions contemplated herein.

## ARTICLE VII
## POST CLOSING MATTERS

7.1     <u>Records</u>.  Within 30 days after the Closing Date, pursuant to Buyer's reasonable instructions, Seller shall deliver to Buyer the Records relevant to the Assets, as the case may be. Buyer shall be entitled to all original Records affecting all of the Assets.  Prior to the delivery thereof to Buyer, Seller may make and retain, at Seller's expense, copies of the Records.  Buyer agrees to maintain all original Records in accordance with its records retention policy, as same may be amended from time to time (or such longer period of time as Seller may request for those Records relevant for tax audit purposes), or, if any of such Records pertain to a Claim pending at such time as the Records would otherwise be destroyed, until such Claim is finally resolved and the time for all appeals has been exhausted.  Buyer shall provide to Seller reasonable access to the Records for purposes of obtaining information for the preparation of tax returns, financial statements and other legitimate business purposes of Seller.  In no event, however, shall Buyer be required to maintain the original Records in the event of any future sale or other disposition of the Assets to which they relate.

7.2     <u>Further Cooperation</u>.  After the Closing Date, Buyer and Seller shall execute and deliver from time to time, or shall cause to be executed and delivered from time to time, such further instruments of conveyance and transfer, and shall take such other actions as either Party may reasonably request, to convey and deliver the Assets to Buyer, to perfect Buyer's title thereto and to accomplish the orderly transfer of the Assets to Buyer.  If, after the Closing Date, either Party receives monies belonging to the other, such amounts shall be promptly disbursed to the Party entitled to receive them.  If an invoice or other evidence of an obligation is received by a Party, which is either an obligation assumed by the other Party or partially an obligation of both Seller and Buyer, the Parties shall consult with each other and promptly settle such obligation in cash as the Parties may agree.

## ARTICLE VIII
## SURVIVAL; INDEMNIFICATION

8.1     <u>Survival</u>.   Subject to <u>Section 8.5</u>, all representations, warranties, covenants, agreements and indemnities of Buyer and Seller under this Agreement shall (a) survive the Closing and the delivery of the Conveyance and (b) not be merged with or into the Conveyance.

8.2     <u>Cumulative Remedies</u>.  The rights and remedies provided in this <u>Article VIII</u> are cumulative and are in addition to and not in substitution for any other rights and remedies available at law or in equity or otherwise.

8.3     <u>Indemnities of Buyer</u>.  BUYER AGREES TO INDEMNIFY AND HOLD HARMLESS SELLER FROM AND AGAINST ALL CLAIMS AND LIABILITIES ARISING FROM OR RELATING TO (A) ANY BREACH OR DEFAULT IN THE PERFORMANCE BY BUYER OF ANY COVENANT OR AGREEMENT OF BUYER MADE IN THIS AGREEMENT OR IN ANY DOCUMENT TO BE DELIVERED HEREUNDER, (B) ANY BREACH OF A WARRANTY OR REPRESENTATION MADE BY BUYER IN THIS

AGREEMENT OR IN ANY DOCUMENT TO BE DELIVERED HEREUNDER OR (C) ANY ASSUMED LIABILITY.

8.4     Indemnities of Seller.  SELLER AGREES TO INDEMNIFY AND HOLD HARMLESS BUYER FROM AND AGAINST ALL CLAIMS AND LIABILITIES ARISING FROM OR RELATING TO (A) ANY BREACH OR DEFAULT IN THE PERFORMANCE BY SELLER OF ANY COVENANT OR AGREEMENT OF SELLER CONTAINED IN THIS AGREEMENT OR IN ANY DOCUMENT TO BE DELIVERED HEREUNDER, (B) ANY BREACH OF A WARRANTY OR REPRESENTATION MADE BY SELLER IN THIS AGREEMENT OR IN ANY DOCUMENT TO BE DELIVERED HEREUNDER OR (C) ANY RETAINED LIABILITY.

8.5     Limitations on Indemnities.  Except in the case of a Party's fraud or material misrepresentation, neither Seller nor Buyer shall be entitled to seek indemnification from the other Party with respect to the inaccuracy or breach of any representation or warranty made by such Party hereunder unless the Party seeking indemnification (a) gives written notice of the alleged breach or default to the Party from whom indemnification is sought on or before the expiration of 6 months after the Closing Date and (b) pursues such indemnification on or before the expiration of 12 months after the Closing Date.  For avoidance of doubt, the foregoing limitation shall not limit either party's respective indemnification obligations for breaches of covenants or agreements of the other Party under this Agreement or for Assumed Liabilities or Retained Liabilities, as applicable.

8.6     Indemnification Procedures.  Whenever any claim shall arise for indemnification hereunder, the party entitled to indemnification (the "Indemnified Party") shall promptly provide written notice of such claim to the other party (the "Indemnifying Party").  The failure to give such prompt written notice shall not, however, relieve the Indemnifying Party of its indemnification obligations, except and only to the extent that the Indemnifying Party forfeits rights or defenses by reason of such failure.  In connection with any claim giving rise to indemnity hereunder resulting from or arising out of any action by a Person who is not a party to this Agreement, the Indemnifying Party, at its sole cost and expense and upon written notice to the Indemnified Party, may assume the defense of any such action with counsel reasonably satisfactory to the Indemnified Party. The Indemnified Party shall be entitled to participate in the defense of any such action, with its counsel and at its own cost and expense. If the Indemnifying Party does not assume, or otherwise does not diligently pursue, the defense of any such action, the Indemnified Party may, but shall not be obligated to, defend against such action in such manner as it may deem appropriate, including, but not limited to, settling such action, after giving notice of it to the Indemnifying Party, on such terms as the Indemnified Party may deem appropriate and no action taken by the Indemnified Party in accordance with such defense and settlement shall relieve the Indemnifying Party of its indemnification obligations herein provided with respect to any damages resulting therefrom. The Indemnifying Party shall not settle any action without the Indemnified Party's prior written consent (which consent shall not be unreasonably withheld or delayed), unless the settlement involvements a full release of liability of the Indemnified Party other than payment of an agreed amount of monetary damages for which the Indemnifying Party is wholly responsible.

8.7     Limitation on Damages.  NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS AGREEMENT, EXCEPT FOR DAMAGES CLAIMED AS PART OF ANY THIRD PARTY CLAIM GIVING RISE TO A CLAIM FOR INDEMNIFICATION HEREUNDER, AND EXCEPT FOR CLAIMS BASED

UPON A PARTY'S FRAUD, MATERIAL MISREPRESENTATION, OR WILLFUL BREACH, NEITHER SELLER NOR BUYER SHALL BE LIABLE TO THE OTHER PARTY AS THE RESULT OF A BREACH OR A VIOLATION OF ANY REPRESENTATION, WARRANTY, COVENANT, AGREEMENT OR CONDITION CONTAINED IN THIS AGREEMENT FOR SPECIAL, CONSEQUENTIAL, INCIDENTAL, PUNITIVE, EXEMPLARY OR INDIRECT DAMAGES, LOST PROFITS OR OTHER BUSINESS INTERRUPTION DAMAGES, IN TORT, IN CONTRACT, UNDER ANY INDEMNITY PROVISION, ARISING BY OPERATION OF LAW (INCLUDING STRICT LIABILITY) OR OTHERWISE.

## ARTICLE IX
## MISCELLANEOUS

9.1     Schedules and Exhibits.  All schedules and exhibits referred to in this Agreement are hereby incorporated into this Agreement by reference and constitute a part of this Agreement for all purposes.  Each Party and its counsel has received a complete set of exhibits and schedules prior to and as of the Execution Date.

9.2     Expenses.  Except as otherwise specifically provided herein, Buyer shall pay all fees, costs, and expenses incurred by Buyer, and Seller shall pay all fees, costs, and expenses incurred by Seller, in each case in negotiating this Agreement and in consummating the transactions contemplated by this Agreement, including legal and accounting fees, costs, and expenses.  Except as otherwise specifically provided herein, Buyer shall bear and pay all required documentary, filing, and recording fees, assessments, and expenses in connection with the filing and recording of counterparts of the Conveyance and any other documents required to convey title to the Assets to Buyer, including release documents executed and, where applicable, acknowledged by Prospect Capital.

9.3     Assignment.  Neither Seller nor Buyer shall assign this Agreement without the prior written consent of the non-assigning Party.  Any such assignment of rights shall provide for the assumption by the transferee of the obligations of the assigning Party under this Agreement. No assignment of any rights hereunder shall relieve the assigning Party of any obligations or responsibilities hereunder.  Upon the assumption by such transferee of the obligations of the assigning Party under this Agreement, such transferee shall become primarily liable for all such obligations assumed.  Notwithstanding any such assumption, however, if such transferee fails to perform any of the obligations thus assumed, the assigning Party shall remain liable for the performance thereof.  Subject to the foregoing, this Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and assigns.

9.4     Notices.  All notices and communications required or permitted to be given hereunder shall be in writing and shall be delivered personally, or sent by certified U.S. mail, postage prepaid with return receipt requested, bonded overnight courier or by facsimile transmission (provided any such facsimile transmission is confirmed either orally or by written confirmation), addressed to the appropriate Party at the address for such Party shown below or at such other address as such Party shall have theretofore designated by written notice delivered to the Party receiving such notice:

If to Buyer:

Nucomer Energy, LLC
558 West 6th Street, Suite 100
Erie, Pennsylvania 16507
Attention:  Stephen D. Keyes
Telephone No.:  (814) 315-0333
Facsimile No.:  (814) 455-5365

If to Seller:

Stryker Energy, LLC
1301 McKinney Street, Suite 2025
Houston, Texas 77010
Attention:  Jeff N. Huddleston
Telephone No.:  (713) 650-0500
Facsimile No.:  (713) 650-0502

Any notice given in accordance herewith shall be deemed to have been given on the Business Day when delivered to the addressee in person or by U.S. certified mail, facsimile or bonded overnight courier; provided, however, that if any such notice is received after normal business hours, the notice shall be deemed to have been given on the next succeeding Business Day.  Any Party may change the address, telephone number and facsimile number to which such communications to such Party are to be addressed by giving written notice to the other Party in the manner provided in this Section 9.4.

9.5    Entire Agreement; Conflicts.  THIS AGREEMENT, THE SCHEDULES AND EXHIBITS HERETO, THE CONVEYANCE AND ANY OTHER DOCUMENTS EXECUTED BY THE PARTIES CONTEMPORANEOUSLY HEREWITH CONSTITUTE THE ENTIRE AGREEMENT BETWEEN THE PARTIES PERTAINING TO THE SUBJECT MATTER HEREOF AND THEREOF AND SUPERSEDE ALL PRIOR AGREEMENTS, UNDERSTANDINGS, NEGOTIATIONS AND DISCUSSIONS, WHETHER ORAL OR WRITTEN, OF THE PARTIES PERTAINING TO THE SUBJECT MATTER HEREOF AND THEREOF. THERE ARE NO WARRANTIES, REPRESENTATIONS OR OTHER AGREEMENTS BETWEEN THE PARTIES RELATING TO THE SUBJECT MATTER HEREOF AND THEREOF, EXCEPT AS SPECIFICALLY SET FORTH HEREIN OR IN THE CONVEYANCE OR ANY SUCH CONTEMPORANEOUS AGREEMENTS.

9.6    Amendments.  This Agreement may only be amended pursuant to a written agreement executed by both of the Parties.

9.7    Waiver; Rights Cumulative.  Any of the terms, covenants, representations, warranties or conditions hereof may be waived only by a written instrument executed by or on behalf of the Party waiving compliance.  No waiver by either Party of any condition, or any breach of any term, covenant, representation or warranty contained in this Agreement, in any one or more instances, shall be deemed to be or construed as a further or continuing waiver of any such condition or breach.  The rights of Buyer and Seller under this Agreement shall be cumulative, and the exercise or partial exercise of any such right shall not preclude the exercise of any other right.

9.8    Governing Law; Jurisdiction; Venue.

(a)    THIS AGREEMENT AND THE LEGAL RELATIONS BETWEEN THE PARTIES SHALL BE GOVERNED AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS, EXCLUDING ANY CONFLICT OF LAWS RULE OR PRINCIPLE OF SUCH LAWS THAT MIGHT REFER CONSTRUCTION OF SUCH PROVISIONS TO THE LAWS OF ANOTHER JURISDICTION, EXCEPT TO THE EXTENT, IF ANY, THAT THE LAWS OF ANY OTHER JURISDICTION MANDATORILY GOVERN.

**(b)** Each Party hereby irrevocably and unconditionally submits, for itself and its property, to the exclusive jurisdiction of any District Court of the State of Texas sitting in Harris County, Texas and of the United States District Court for the Southern District of Texas, Houston Division and any appellate court from any thereof, in any action or proceeding arising out of or relating to this Agreement or for recognition or enforcement of any judgment.

**(c)** Each Party hereby irrevocably and unconditionally waives, to the fullest extent it may legally and effectively do so, any objection which it may now or hereafter have, as well as the defense of an inconvenient forum, to the laying of venue of any suit, action or proceeding arising out of or relating to this Agreement in any court referred to in Section 9.8(b).

9.9    Dispute Resolution. **This Section 9.9 contains a jury waiver, a class action waiver and an arbitration provision. Read Carefully**.

**(a)** This dispute resolution provision shall supersede and replace any prior "Jury Waiver," "Judicial Reference," "Class Action Waiver," "Arbitration," "Dispute Resolution" or similar alternative dispute agreement or provision between or among the parties hereto.

**(b)** As permitted by applicable law, each party hereto hereby knowingly, voluntarily, intentionally, irrevocably and unconditionally **waives its rights to a trial before a jury in connection with any claim, dispute or controversy with respect to this Agreement** (each of the foregoing, a "Dispute"), and, except as provided below in this Section 9.9, **disputes shall be resolved by a judge sitting without a jury**. If a court determines that this provision is not enforceable for any reason and at any time prior to trial of the Dispute, but not later than 30 days after entry of the order determining this provision is unenforceable, any party hereto shall be entitled to move the court for an order compelling arbitration and staying or dismissing such litigation pending arbitration (an "Arbitration Order"). If permitted by applicable law, **each party also waives the right to litigate in court or an arbitration proceeding any Dispute as a class action, either as a member of a class or as a representative, or to act as a private attorney general.**

**(c)** If a Dispute arises, and only if a jury trial waiver is not permitted by applicable law or ruling by a court, any party may require that the Dispute be resolved by binding arbitration before a single arbitrator. **By agreeing to arbitrate a Dispute, each party hereto gives up any right that party may have to a jury trial as well as other rights that party would have in court that are not available or are more limited in arbitration, such as the rights to discovery and to appeal.**

Arbitration shall be commenced by filing a petition with, and in accordance with the applicable arbitration rules of, JAMS or National Arbitration Forum (the "Administrator") as selected by the initiating party. If the parties to the Dispute agree, arbitration may be commenced by appointment of a licensed attorney who is selected by the parties to the Dispute and who agrees to conduct the arbitration without an Administrator. Disputes include matters (i) relating to a deposit account, application for or denial of credit, enforcement of any of the obligations any party hereto has to any of the other parties hereto, compliance with applicable laws and/or regulations, performance of services provided under any agreement by any party

- 16 -

hereto, (ii) based on or arising from an alleged tort or (iii) involving any party's employees, agents, affiliates or assigns, Disputes do not, however, include the validity, enforceability, meaning or scope of this arbitration provision and such matters may be determined only by a court. If a third party is a party to a Dispute, each party hereto consents to including the third party in the arbitration proceeding for resolving the Dispute with the third party. Venue for the arbitration proceeding shall be at a location determined by mutual agreement of the parties thereto or, absent such an agreement, in the city and state where the Agent is headquartered.

If a court issues an Arbitration Order, all parties to the Dispute that did not seek the Arbitration Order shall commence arbitration. The party hereto that sought the Arbitration Order may commence arbitration, but shall have no obligation to do so, and shall not in any way be adversely prejudiced by initiating or participating in litigation or electing not to commence arbitration. The arbitrator shall (i) hear and rule on appropriate dispositive motions for judgment on the pleadings, for failure to state a claim or for full or partial summary judgment, (ii) render a decision and any award applying applicable law, (iii) give effect to any limitations period in determining any Dispute or defense, (iv) enforce the doctrines of compulsory counterclaim, res judicata and collateral estoppel, if applicable, (v) with regard to motions and the arbitration hearing, apply rules of evidence governing civil cases and (vi) apply the law of the state specified in the agreement giving rise to the Dispute. Filing of a petition for arbitration shall not prevent any party from (i) seeking and obtaining from a court of competent jurisdiction (notwithstanding ongoing arbitration) provisional or ancillary remedies including injunctive relief, property preservation orders, foreclosure, eviction, attachment, replevin, garnishment and/or the appointment of a receiver, (ii) pursuing non-judicial foreclosure or (iii) availing itself of any self-help remedies, such as setoff and repossession. The exercise of such rights shall not constitute a waiver of the right to submit any Dispute to arbitration.

Judgment upon an arbitration award may be entered in any court having jurisdiction, except that, if the arbitration award exceeds $4,000,000, any party to the relevant Dispute shall be entitled to a de novo appeal of the award before a panel of three arbitrators. To allow for such appeal, if the award (including the Administrator's, the arbitrator's and attorney's fees and costs) exceeds $4,000,000, the arbitrator will issue a written, reasoned decision supporting the award, including a statement of authority and its application to the Dispute. A request for de novo appeal must be filed with the arbitrator within 30 days following the date of the arbitration award. If such a request is not made within that time period, the arbitration decision shall become final and binding. On appeal, the arbitrators shall review the award de novo, meaning that they shall reach their own findings of fact and conclusions of law, rather than deferring in any manner to the original arbitrator. Appeal of an arbitration award shall be pursuant to the rules of the Administrator or, if the Administrator has no such rules, then the JAMS arbitration appellate rules shall apply.

Arbitration under this provision concerns a transaction involving interstate commerce and shall be governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. This arbitration provision shall survive any termination, amendment or expiration of this Agreement. If the terms of this provision vary from the Administrator's rules, this arbitration provision shall control.

(d)       Each party hereto (i) certifies that no one has represented to such party that any other party would not seek to enforce jury and class action waivers in the event of suit,

and (ii) acknowledges that it and the other parties have been induced to enter into this Agreement by, among other things, the mutual waivers, agreements and certifications in this Section 9.9.

9.10    Severability.  If any term or other provision of this Agreement is invalid, illegal or incapable of being enforced by any rule of Law or public policy, all other conditions and provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in any adverse manner to any Party.  Upon such determination that any term or other provision of this Agreement is invalid, illegal or incapable of being enforced, the Parties shall negotiate in good faith to modify this Agreement so as to effect the original intent of the Parties as closely as possible in an acceptable manner to the end that the transactions contemplated hereby are fulfilled to the extent possible.

9.11    Allocation and Proration of Taxes.  Each Party shall assume responsibility for, and shall bear and pay, all federal income taxes, state income taxes, franchise taxes, margin taxes and other similar taxes (including any applicable interest or penalties) incurred by or imposed upon such Party with respect to or as a result of the transactions described in this Agreement, except that Buyer shall assume responsibility for, and shall bear and pay, all Transfer Taxes (if any) incurred or imposed with respect to the conveyance of the Assets to Buyer.  All Property-Related Taxes and Production Taxes based upon or measured by the ownership of the Assets, Hydrocarbon production therefrom, or the receipt of proceeds therefrom, but exclusive of income taxes, and assessed against the Assets by any taxing authority shall be prorated between Seller and Buyer as of the Effective Time.  As a result, as between Seller and Buyer: (a) Seller shall be responsible for, and shall bear and pay, all such Property-Related Taxes and Production Taxes assessed by any taxing authority that are attributable to the period prior to the Effective Time and (b) Buyer shall be responsible for, and shall bear and pay, all such Property-Related Taxes and Production Taxes assessed by any taxing authority that are attributable to the period after the Effective Time.

9.12    Counterparts.   For the convenience of the parties, this Agreement may be executed in multiple counterparts, each of which for all purposes shall be deemed to be an original, and all such counterparts shall together constitute but one and the same agreement.  Delivery of an executed counterpart of a signature page of this Agreement by telecopy, e-mail, facsimile transmission, electronic mail in "portable document format" (".pdf") form or other electronic means intended to preserve the original graphic and pictorial appearance of the item being sent shall be effective as a delivery of a manually executed counterpart of this Agreement.

9.13    Nonrepresentation; Independent Legal Counsel.   Buyer and Seller agree and acknowledge that the initial draft of this Agreement was prepared by Jackson Walker L.L.P., as counsel to Amegy, solely for the convenience of and as an accommodation to the Parties, and that Jackson Walker L.L.P. does not represent either Party in connection with this Agreement or the transaction contemplated hereby.  Buyer and Seller have each been represented, or had an opportunity to consult with and be represented by, counsel of their own choosing in connection with this Agreement and the transaction contemplated hereby, and have not relied on Amegy nor on Jackson Walker L.L.P. with respect to the accuracy, sufficiency or enforceability of this Agreement, any other agreement, instrument, or document contemplated hereby, or any particular provision hereof or thereof.

- 18 -

IN WITNESS WHEREOF, Seller and Buyer have executed this Asset Purchase and Sale Agreement to be effective as of the Effective Time.

**SELLER**:

STRYKER ENERGY, LLC

By:＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
John T. Young, Jr.
Chief Operations Manager

Date signed: ＿＿＿＿＿＿＿＿＿＿＿＿

**(Signatures continue on following page)**

**(Balance of page intentionally left blank)**

**(Signature page to Asset Purchase and Sale Agreement)**

**BUYER**:

**NUCOMER ENERGY, LLC**

By:_____
    Stephen D. Keyes
    President

Date signed:_____

**(Balance of page intentionally left blank)**

**(Signature page to Asset Purchase and Sale Agreement)**

Schedule 1

Defined Terms; Interpretation

Part 1. <u>Definitions</u>.   The following terms and expressions shall have the meanings set forth hereinafter:

"<u>Administrator</u>" is defined in <u>Section 9.9</u>.

"<u>Affiliate</u>" means, with respect to a Party, any Person that directly or indirectly controls, is controlled by or is under common control with the relevant Party.   For purposes of this definition, the term "control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person, whether through ownership of voting securities, contract, voting trust, membership in management or in the group appointing or electing management or otherwise through formal or informal arrangements or business relationships.

"<u>Agreement</u>" is defined in the introductory paragraph hereof and includes all Schedules and Exhibits hereto, as well as all supplements, amendments and restatements hereof entered into after the Effective Time, if any.

"<u>Amegy</u>" means ZB, N.A. (formerly Amegy Bank National Association and now doing business in Texas as Amegy Bank), a national banking association.

"<u>Amegy Note</u>" means the Promissory Note dated April 28, 2006 in the face principal amount of up to $100,000,000 payable by Seller to Amegy issued by Seller pursuant to the Credit Agreement.

"<u>Amegy Note PSA</u>" means the Note Purchase and Sale Agreement dated effective as of the Effective Time among Amegy, Amegy in its capacities as agent and letter of credit issuer under the Credit, Buyer, Buyer in its capacities as successor to Amegy as agent and letter of credit issuer under the Credit Agreement and Seller.

"<u>Amegy Security Documents</u>" means, collectively, the security documents and judgments (including filings made to perfect the Lien arising as a result of any such judgment) listed in <u>Schedule 2</u>.

"<u>Arbitration Order</u>" is defined in <u>Section 9.9</u>.

"<u>Assets</u>" is defined in <u>Exhibit A</u>.

"<u>Assumed Liabilities</u>" is defined in <u>Section 2.4</u>.

"<u>Business Day</u>" means any day other than a Saturday, Sunday or other day on which commercial banks in Houston, Texas are required or authorized by Law to be closed.

"<u>Buyer</u>" is defined in the introductory paragraph of this Agreement.

"Claims" means any and all claims, demands, Liens, notices of non-compliance or violation, notices of liability or potential liability, investigations, actions (whether judicial, administrative or arbitrational), causes of action, suits and controversies.

"Closing" is defined in Section 2.1.

"Closing Date" means the date on which the transaction which is the subject of this Agreement is consummated.

"Code" means the United States Internal Revenue Code of 1986, as amended.

"Contracts" is defined in Section 3.9.

"Conveyance" is defined in Section 2.1.

"Credit Agreement" means the Credit Agreement dated April 28, 2006 among Seller, Amegy in its capacities as agent and letter of credit issuer and the lenders party thereto, as amended to the Effective Time.

"Dispute" is defined in Section 9.9.

"Effective Time" is defined in the introductory paragraph of this Agreement.

"EmKey Resources" means EmKey Resources, LLC, a limited liability company.

"Environmental Laws" means all applicable Laws (including CERCLA, the Resource Conservation and Recovery Act and the Oil Pollution Act of 1990, and applicable rules of the relevant Governmental Authorities in the State of New York, the State of Ohio or the State of Pennsylvania, as applicalbe, relating to the management or disposal of oilfield waste, in each case as amended from time to time) relating to the protection of the public health, welfare and environment, worker protection, emergency planning and/or a community's right to know, including those Laws relating to the storage, handling and use of chemicals and other hazardous materials, those relating to the Release, generation, processing, treatment, storage, transportation, disposal or other management of waste materials of any kind, those relating to the protection of environmentally sensitive areas and employee health and safety.

"Excluded Assets" is defined in Section 2.2.

"Governmental Authority" means any governmental or quasi-governmental federal, state, provincial, county, city or other political subdivision of the United States, any foreign country or any department, bureau, agency, commission, court or other statutory or regulatory body or instrumentality thereof.

"Herkimer Escrow" means the account containing the funds, if any, that have resulted from the sale of hydrocarbons and the share of such funds that are attributable to Seller's Working Interest in the Herkimer Wells but have been historically withheld by the operator, EmKey Resources.  For the avoidance of doubt, the funds may no longer exist and will only become recoverable if restored by EmKey Resources or its successor and the dispute(s) involving such funds has (have) been resolved.

"Herkimer Wells" means the Wells listed on page Exhibit A-1-xiii of <u>Exhibit A-1</u> to this Agreement under the heading "Herkimer Wells".

"Hydrocarbons" means all crude oil, natural gas, condensate, distillate, natural gasoline, natural gas liquids, plant products and other liquid or gaseous hydrocarbons, the right to explore for which, or an interest in which, is granted pursuant to the Leases.

"Imbalance" means any imbalance between the quantity of Hydrocarbons produced from any Well and allocated to a Person from time to time and the share of such production to which such Person is actually entitled by virtue of its ownership interest in such Well.

"Intangible Rights" means all intangible rights, inchoate rights, transferable rights under warranties made by prior owners, manufacturers, vendors and third Persons, and rights accruing under applicable statutes of limitation or prescription that relate to or are attributable to the rights, interests and properties comprising the Assets.

"Knowledge" means (a) with respect to Buyer, the actual knowledge of Øivind Risberg, Stephen D. Keyes or Keith C. Farrell and (b) with respect to Seller, the actual knowledge of Garry Regan or Mike Dodson.

"Laws" means all constitutions, treaties, laws, statutes, ordinances, rules, regulations, orders and decrees of the United States, any foreign country and any local, state, provincial or federal political subdivision or agency thereof, as well as all judgments, decrees, orders and decisions of courts having the effect of law in each such jurisdiction, including all Environmental Laws.

"Lease" is defined in <u>Exhibit A</u>.

"Lease Burdens" means all lessors' royalties, overriding royalties (including the Prospect Capital ORRI), production payments, net profits interests and similar contractual burdens upon, payable out of or measured by Hydrocarbon production from a Lease.

"Lease Maintenance Payments" means any delay rental, shut-in well payment, minimum royalty or other payment necessary under the terms of any Lease to maintain such Lease in full force and effect in the absence of production from, or operations on, the lands covered thereby.

"Liabilities" means any and all losses, judgments, damages, liabilities, injuries, costs, expenses, interest, penalties, taxes, fines, obligations and deficiencies of any kind whatsoever under any theory of liability or responsibility, whether known or unknown, and whether fixed, liquidated or contingent.  As used herein, the term "Liabilities" includes reasonable attorneys' fees and other costs and expenses of any Party receiving indemnification hereunder incident to the investigation and defense of any Claim that results in litigation, or the settlement of any Claim, or the enforcement by any Party receiving indemnification hereunder of the relevant provisions of <u>Article VIII</u>.

"Lien" means any mortgage, deed of trust, pledge, security interest, encumbrance, lien or charge of any kind (including any agreement to grant any of the foregoing), any conditional sale

or title retention agreement, any lease in the nature thereof or the filing of or agreement to give any financing statement under the Uniform Commercial Code of any jurisdiction.

"Material Adverse Effect" means, when used with respect to Seller, a result or consequence that (a) would materially and adversely affect the aggregate value of the Assets, (b) would materially impair the ability of Seller to own, hold, develop, and operate the Assets, (c) would adversely affect, in any material respect, the ability of Seller to perform its obligations under this Agreement or the documents executed in connection herewith or consummate the transaction contemplated herein and therein or (d) would prevent or materially delay the performance of this Agreement, excluding, however, changes resulting from (i) commodity price movements, (ii) normal oilfield operating, drilling, and producing occurrences, or (iii) general economic conditions that may impact the energy industry as a whole.

"Parties" is defined in the introductory paragraph of this Agreement.

"Party" is defined in the introductory paragraph of this Agreement.

"Permits" means the permits, licenses, authorizations, certificates, registrations and other approvals granted by any Governmental Authority that pertain or relate in any way to the Leases, the Units, and the Wells, respectively.

"Permitted Encumbrances" means:

(a)     Liens, other Claims, and other encumbrances held or asserted by Amegy, whether under the Amegy Security Documents or otherwise;

(b)     preferential rights to purchase any Asset (including any Contract), required non-governmental, third Person consents to assignment and similar agreements;

(c)     Liens for taxes or assessments not yet delinquent or, if delinquent, those taxes or assessments that are being contested in good faith by proceedings diligently conducted in the normal course of business;

(d)     all rights to consent by, required notices to, filings with or other actions by Governmental Authorities in connection with the sale or conveyance of the Assets, if the same are customarily obtained, given or made subsequent to such sale or conveyance;

(e)     this Agreement, the Leases and the Contracts;

(f)     all easements, rights-of-way, servitudes, permits, licenses, surface leases and other rights to use the surface affecting or pertaining to the Assets, but that are not included in the Assets and do not interfere materially with the ownership, operation, value or use of the Assets;

(g)     Lease Burdens (including the Prospect Capital ORRI), division orders, carried interests, rights to recoupment, unitization, pooling, proration and spacing designations, orders, and agreements, reversionary interests and similar burdens; and

(h)     any lessor's, operator's or other inchoate or undetermined Lien or charge, whether statutory or contractual, constituting or securing the payment of Lease Burdens or of expenses which were or will be incurred in the ordinary course of business and incidental to the maintenance, development, production or operation of any Asset, to the extent the same secure amounts not yet due and payable or that are being contested in good faith by proceedings diligently conducted in the normal course of business.

"Person" means any individual, corporation, limited liability company, partnership, trust, unincorporated organization, Governmental Authority or any other form of entity.

"Personal Property" means all equipment, machinery, fixtures, improvements and other personal and mixed property (including all wellbores in addition to the Wells, whether active, inactive or plugged and abandoned), whether movable or immovable, located either on or off the lands covered by the Leases or the Units and that is used in connection with the ownership, use and operation of the Leases, the Units and the Wells and the production, treatment, gathering, storage, processing, transportation and marketing of Hydrocarbons produced therefrom or allocable thereto.  For purposes of this Agreement, the term "Personal Property" shall not include any personal property leased from third Persons but shall include all furniture and fixtures owned by Seller, including all computers, computer files, accounting software owned by Seller that Seller is currently using in connection with the day-to-day operation of the Assets.

"Production Taxes" means any and all severance, production, gathering, Btu or gas, transportation, gross receipts, utility, excise and other similar taxes (other than Property-Related Taxes, Transfer Taxes and taxes based on or measured by net income or net worth) relating to the production, gathering or transportation of Hydrocarbons, or increases therein, and any interest or penalties thereon.

"Property-Related Taxes" means any and all ad valorem, property, generation, conversion, privilege, consumption, lease, transaction and other taxes, governmental charges or fees, licenses, fees, permits and assessments or increases therein and any interest or penalties thereon, other than Production Taxes, Transfer Taxes and taxes based on or measured by net income or net worth.

"Prospect Capital" means Prospect Capital Corporation, a Maryland corporation.

"Prospect Capital ORRI" means the overriding royalty interest held by Prospect Capital with respect to production of Hydrocarbons from the Wells and attributable to the interest of Seller in, among other wells, the Wells.

"Records" means all files, records (including land and title records; drawings, maps, plats and surveys; abstracts of title, title insurance policies, title opinions and title curative; lease, contract, division order, marketing, correspondence, operations, environmental, production, processing, accounting, Property-Related Tax, Production Tax, regulatory compliance and facility and well records and files; and reports to Governmental Authorities) and other information that relate in any way to any of the Assets, are in the possession of Seller and the disclosure and transfer of which is not prohibited or restricted by confidentiality or other contractual restrictions in existence on the Closing Date.

Schedule 1-v

"Retained Liabilities" is defined in Section 2.5.

"Seller" is defined in the introductory paragraph of this Agreement.

"Transfer Taxes" means any sales, use, stock, stamp, document, filing, recording, registration and similar tax or charge, including any interest or penalties thereon.

"Unit" means a unit for the production and operation of a Hydrocarbon well created by the pooling, unitization or communitization, whether voluntary or governmental, of one or more of the Leases and the lands covered thereby with other oil and gas leases and lands.

"Well" is defined in Exhibit A.

"Working Interest" means, with respect to each Lease, the interest that represents the ownership of the oil and gas leasehold estate created by such Lease and that is burdened with the obligation to bear and pay costs of operations on or in respect of such Lease.

Part 2.   Interpretation.     The following rules of interpretation shall apply to this Agreement:

(a)      References.  The words "hereby," "herein," "hereinabove," "hereinafter," "hereinbelow," "hereof," "hereto," "hereunder" and words of similar import when used in this Agreement shall refer to this Agreement as a whole and not to any particular article, section or provision of this Agreement.  References in this Agreement to Articles, Sections, Exhibits or Schedules are to such Articles, Sections, Exhibits or Schedules of this Agreement unless otherwise specified.

(b)      Articles and Sections.  This Agreement, for convenience only, has been divided into Articles and Sections.  The rights and other legal relations of the Parties shall be determined from this Agreement as an entirety and without regard to the aforesaid division into Articles and Sections and without regard to headings prefixed to such Articles and Sections.

(c)      Number and Gender.  Whenever the context requires, reference herein made to a single number shall be understood to include the plural; and likewise, the plural shall be understood to include the singular.  Words denoting sex shall be construed to include the masculine, feminine and neuter, when such construction is appropriate; and the words "include", "includes" and "including" shall mean, in each case, "include, without limitation", "includes, without limitation" and "including, without limitation."  Specific enumeration shall not exclude the general but shall be construed as cumulative.  Definitions of terms defined in the singular or plural shall be equally applicable to the plural or singular, as applicable, unless otherwise indicated.

Schedule 2

Amegy Security Documents

**(See following pages)**

**(Balance of page intentionally left blank)**

<u>Schedule 2</u>

1.      Security Agreement dated April 28, 2006, by Stryker Energy, LLC, as Debtor, in favor of Amegy Bank National Association, as administrative agent, as Secured Party.

      as amended by Amendment to Security Agreement dated December 1, 2006, by Stryker Energy, LLC, as Debtor, in favor of Amegy Bank National Association, as administrative agent, as Secured Party.

2.      Security Agreement dated April 6, 2012, by Stryker Energy, LLC, as Debtor, in favor of Amegy Bank National Association, as administrative agent, as Secured Party (covering certain commercial tort claims).

3.      Mortgage, Indenture, Security Agreement, Financing Statement and Assignment of Production dated April 28, 2006, from Stryker Energy, LLC to Amegy Bank National Association, as administrative agent, filed and recorded as follows:

| JURISDICTION | FILING DATA |
| --- | --- |
| **PENNSYLVANIA** | |
| Armstrong County | Filed and recorded May 8, 2006 as Instrument No. 2006-003932, Receipt No. 2108906, Record Book 3228, Page 0082 or 0089 |
| Clarion County | Filed and recorded May 8, 2006, as Instrument No. 2006-2144, Record Book 0700, Page 0142 |
| Mercer County | Filed and recorded May 8, 2006, as Instrument No. 2006-00006492, Image ID 000000094333, Reel 581, Frame 2306 |

      as ratified and amended by Ratification of and Amendment to Mortgage, Indenture, Security Agreement, Financing Statement and Assignment of Production dated December 1, 2006, from Stryker Energy, LLC to Amegy Bank National Association, as administrative agent, filed and recorded as follows:

| | |
| --- | --- |
| Armstrong County | Filed December 6, 2006 under Instrument No. 2006-011070, Record Book 3355, Pages 304-316 |
| Clarion County | Filed December 6, 2006 under Instrument No. 2006-6317, Book 718, Pages 1015-1026 |
| Mercer County | Filed and recorded January 22, 2007, Instrument No. 2007-00000932, Image ID 000000178126, Reel 610, Frame 2780 |

1

as ratified and amended by Ratification of and Amendment to Mortgage, Indenture, Security Agreement, Financing Statement and Assignment of Production dated November 23, 2010, from Stryker Energy, LLC to Amegy Bank National Association, as administrative agent, filed and recorded as follows:

Mercer County                    Filed March 28, 2011 under Instrument No. 2011-00002957, Image ID 000001989839

and as ratified and amended by Amendment and Ratification of Mortgage, Indenture, Security Agreement, Financing Statement and Assignment of Production dated effective September 15, 2011, from Stryker Energy, LLC to Amegy Bank National Association, as agent, filed and recorded as follows:

Mercer County                    Filed September 19, 2011 under Instrument No. 2011-00009553, Image ID 000002023945

4.    Mortgage, Indenture, Security Agreement, Financing Statement and Assignment of Production dated December 1, 2006, from Stryker Energy, LLC to Amegy Bank National Association, as agent, filed and recorded as follows:

**PENNSYLVANIA**

Warren County                    Filed and recorded January 5, 2007 under Document No. 2007-79, Volume 1660, Page 315

as ratified and amended by Ratification of and Amendment to Mortgage, Indenture, Security Agreement, Financing Statement and Assignment of Production dated November 23, 2010, from Stryker Energy, LLC to Amegy Bank National Association, as agent, filed and recorded as follows:

Warren County                    Filed and recorded April 25, 2011 under Document No. 2011-1540, Volume 2085, Page 25

and as ratified and amended by Amendment to and Ratification of Mortgage, Indenture, Security Agreement, Financing Statement and Assignment of Production dated effective September 15, 2011, from Stryker Energy, LLC to Amegy Bank National Association, as agent, filed and recorded as follows:

Warren County                    Filed and recorded September 19, 2011 under Document No. 2011-3928, Volume 2126, Page 45

5.    Mortgage, Indenture, Security Agreement, Financing Statement and Assignment of Production dated November 23, 2010, from Stryker Energy, LLC to Amegy Bank National Association, as agent, filed and recorded as follows:

**PENNSYLVANIA**

2

|                    |                                                               |
|--------------------|---------------------------------------------------------------|
| Crawford County    | Filed and recorded March 31, 2011, as Instrument No. 201100002441, OR Book 1040, Page 1255 |

as ratified and amended by Amendment to and Ratification of Mortgage, Indenture, Security Agreement, Financing Statement and Assignment of Production dated effective September 15, 2011, from Stryker Energy, LLC to Amegy Bank National Association, as agent, filed and recorded as follows:

|                    |                                                               |
|--------------------|---------------------------------------------------------------|
| Crawford County    | Filed and recorded March 31, 2011, as Instrument No. 201100007971, OR Book 1059, Page 647 |

6.  Open End Mortgage, Indenture, Security Agreement, Financing Statement and Assignment of Production dated November 23, 2010, from Stryker Energy, LLC to Amegy Bank National Association, as agent, filed and recorded as follows:

### OHIO

|                    |                                                               |
|--------------------|---------------------------------------------------------------|
| Trumbull County    | Filed and recorded April 28, 2011, as Instrument No. 201104280007917 |

as ratified and amended by Amendment to and Ratification of Open End Mortgage, Indenture, Security Agreement, Financing Statement and Assignment of Production dated effective September 15, 2011, from Stryker Energy, LLC to Amegy Bank National Association, as agent, filed and recorded as follows:

|                    |                                                               |
|--------------------|---------------------------------------------------------------|
| Trumbull County    | Filed and recorded September 20, 2011 under Document No. 201109200018015 |

7.  Mortgage, Indenture, Security Agreement, Financing Statement and Assignment of Production dated effective September 15, 2011, from Stryker Energy, LLC to Amegy Bank National Association, as Agent, filed and recorded as follows:

### NEW YORK

|                    |                                                               |
|--------------------|---------------------------------------------------------------|
| Cattaraugus County | Filed and recorded October 20, 2011, as Instrument No. 166685-001 |
| Chautauqua County  | Filed and recorded October 24, 2011, as Instrument No. MT2011004256 |
| Chenango County    | Filed and recorded October 24, 2011, as Instrument No. 2011-00002402 |
| Genesee County     | Filed and recorded October 21, 2011, as Liber 1626, Page 378 |

3

Madison County      Filed and recorded October 24, 2011, as Instrument No. 2011-6013

8.  UCC Financing Statements naming Stryker Energy, LLC, as Debtor, and Amegy Bank National Association, as agent, as Secured Party, filed as follows:

**OHIO**

Secretary of State      Filed May 12, 2006 as File No. OH00102092824, as amended by File No. 20063450834, filed December 28, 2006, as continued by File No. 20110410307, filed February 10, 2011, as amended by File No. 20112130046, filed July 29, 2011, and as continued by File No. 20153520606, filed December 18, 2015

Secretary of State      Filed May 12, 2006 as File No. OH00102093058, as amended by File No. 20063450838, filed December 8, 2006, as continued by File No. 20110410306, filed February 10, 2011, as amended by File No. 20112130047, filed July 29, 2011, and as continued by File No. 20153520604, filed December 18, 2015

Secretary of State      Filed May 24, 2006 as File No. OH00102580061, as amended by File No. 20063450836, filed December 8, 2006, as continued by File No. 20110490068, filed February 18, 2011, as amended by File No. 20112130048, filed July 29, 2011, and as continued by File No. 20153490298, filed December 15, 2015

Secretary of State      Filed May 24, 2006 as File No. OH00102580172, as amended by File No. 20063450840, filed December 8, 2006, as continued by File No. 20110490069, filed February 18, 2011, as amended by File No. 20112130049, filed July 29, 2011, and as continued by File No. 20153490300, filed December 15, 2015

Secretary of State      Filed April 9, 2012 as File No. OH00157424703, as amended by File No. 20121140116, filed April 20, 2012

9.  UCC Financing Statements naming Stryker Energy, LLC, as Debtor, and Amegy Bank National Association, as agent, as Secured Party, filed and recorded as follows:

**PENNSYLVANIA**

Armstrong County      Filed and recorded May 8, 2006 as Instrument No. 003933,

|                   | as amended by Instrument No. 011074, filed December 6, 2006, and as continued by Instrument No. 201103779, filed March 30, 2011 |
|-------------------|---|
| Clarion County    | Filed and recorded May 8, 2006 as Deed Book 0700, Page 0167, as amended by Deed Book 0718, Page 1027, filed December 6, 2006, as continued by Deed Book 0834, Page 0068, filed March 30, 2011, and as continued by Deed Book 0834, Page 0259 |
| Crawford County   | Filed and recorded March 31, 2011 as Instrument No. 201100002442 |
| Mercer County     | Filed and recorded May 8, 2006 as Deed Book 581, Page 2331, as amended by Deed Book 611, Page 73, filed January 22, 2007, and as continued by Deed Book 727, Page 1536, filed March 30, 2011 |
| Warren County     | Filed and recorded January 5, 2007 as Instrument No. 2007-3117 |

10. UCC Financing Statements naming Stryker Energy, LLC, as Debtor, and Amegy Bank National Association, as agent, as Secured Party, filed and recorded as follows:

   **NEW YORK**

| Chautauqua County | Filed and recorded January 17, 2007 as Deed Book 8, Page 560, Instrument No. UC 2007 000034, as continued by Instrument No. UC2011000199, filed December 6, 2011 |
|-------------------|---|
| Chautauqua County | Filed and recorded January 17, 2007 as Deed Book 8, Page 575, Instrument No. UC 2007 000035, as continued by Instrument No. UC2011000278, filed December 6, 2011 |

11. Final Judgment entered of record on September 11, 2012 in Civil Action 4:12-CV-0815, Amegy Bank National Association, as Agent, v. Stryker Energy, LLC, in the U.S. District Court for the Southern District of Texas, Houston Division.

12. Judgment Lien: Judgment entered on October 24, 2012, in the Supreme Court of the State of New York, County of Chenango, against Stryker Energy, LLC in favor of Amegy Bank National Association, as Agent, an abstract of which is filed and recorded as follows:

   **NEW YORK**

| Albany County | Docketed in the office of the Clerk of the County of Albany on November 7, 2012 in judgment book T12, page No. 4050, |
|---------------|---|

5

Index no. 11269939

| | |
|---|---|
| Allegany County | Docketed in the office of the Clerk of the County of Allegany on November 5, 2012 under index no. J-37860 |
| Bronx County | Docketed in the office of the Clerk of the County of Bronx on November 13, 2012 under index no. 177424 |
| Broome County | Docketed in the office of the Clerk of the County of Broome on November 8, 2012 under index no. JTAG5698 |
| Cattaraugus County | Docketed in the office of the Clerk of the County of Cattaraugus on November 5, 2012 under index no. CJ051072-001 |
| Cayuga County | Docketed in the office of the Clerk of the County of Cayuga on November 5, 2012 under index no. 2012-00004348 |
| Chautauqua County | Docketed in the office of the Clerk of the County of Chautauqua on November 8, 2012 under index no. JU2012007273 |
| Chemung County | Docketed in the office of the Clerk of the County of Chemung on November 5, 2012 under index no. 201225599 |
| Chenango County | Docketed in the office of the Clerk of the County of Chenango on October 24, 2012 as Judgment No. 2012-00001752 and Index No. 2012-00000842 |
| Clinton County | Docketed in the office of the Clerk of the County of Clinton on November 5, 2012 under index no. 2012-00061191 |
| Columbia County | Docketed in the office of the Clerk of the County of Columbia on November 7, 2012 under index no. 2012015511 |
| Cortland County | Docketed in the office of the Clerk of the County of Cortland on November 5, 2012 under index no. CJ-2012-02668 |
| Delaware County | Docketed in the office of the Clerk of the County of Delaware on November 5, 2012 under index no. 178907 |
| Dutchess County | Docketed in the office of the Clerk of the County of Dutchess on November 7, 2012 under index no. 2012/8543T |
| Erie County | Docketed in the office of the Clerk of the County of Erie on |

6

November 5, 2012 under index no. 2012-10003487

| | |
|---|---|
| Essex County | Docketed in the office of the Clerk of the County of Essex on November 5, 2012 in judgment book 176, page No. 93 |
| Franklin County | Docketed in the office of the Clerk of the County of Franklin on November 8, 2012 under index no. 2012-3008625 |
| Fulton County | Docketed in the office of the Clerk of the County of Fulton on November 5, 2012 under index no. 2012-3414 |
| Genesee County | Docketed in the office of the Clerk of the County of Genesee on November 5, 2012 under index no. 3121502 |
| Greene County | Docketed in the office of the Clerk of the County of Greene on November 5, 2012 under index no. 362661 |
| Hamilton County | Docketed in the office of the Clerk of the County of Hamilton on November 5, 2012 under judgment no. 2012-389 |
| Herkimer County | Docketed in the office of the Clerk of the County of Herkimer on November 5, 2012 under index no. 41419 |
| Jefferson County | Docketed in the office of the Clerk of the County of Jefferson on November 14, 2012 under index no. 6624120001 |
| Kings County | Docketed in the office of the Clerk of the County of Kings on November 7, 2012 |
| Lewis County | Docketed in the office of the Clerk of the County of Lewis on November 5, 2012 under index no. 2012-005695 |
| Livingston County | Docketed in the office of the Clerk of the County of Livingston on November 5, 2012 in judgment book 0012, page Nos. 1748-1749 |
| Madison County | Docketed in the office of the Clerk of the County of Madison on November 5, 2012 under judgment no. 2012-8138 |
| Monroe County | Docketed in the office of the Clerk of the County of Monroe on November 14, 2012 under reference no. B2012020784 |
| Montgomery County | Docketed in the office of the Clerk of the County of Montgomery on November 5, 2012 under index no. 2012- |

33549

| | |
|---|---|
| Nassau County | Docketed in the office of the Clerk of the County of Nassau on November 5, 2012 |
| New York County | Docketed in the office of the Clerk of the County of New York on November 9, 2012 |
| Niagara County | Docketed in the office of the Clerk of the County of Niagara on November 5, 2012 under index no. 2012J08423 |
| Oneida County | Docketed in the office of the Clerk of the County of Oneida on November 6, 2012 under judgment no. J2012-011299 |
| Onondaga County | Docketed in the office of the Clerk of the County of Onondaga on November 5, 2012 under index no. 2012OC219 |
| Ontario County | Docketed in the office of the Clerk of the County of Ontario on November 5, 2012 under index nos. 2.01211E+11 and 20120102083 |
| Orange County | Docketed in the office of the Clerk of the County of Orange on November 5, 2012 in judgment book 8126, page No. 0437 |
| Orleans County | Docketed in the office of the Clerk of the County of Orleans on November 5, 2012 under index no. 21867 |
| Oswego County | Docketed in the office of the Clerk of the County of Oswego on November 5, 2012 under index no. 2012-16540 |
| Otsego County | Docketed in the office of the Clerk of the County of Otsego on November 5, 2012 under index no. 201216540 |
| Putnam County | Docketed in the office of the Clerk of the County of Putnam on November 6, 2012 under index no. 5000221 |
| Queens County | Docketed in the office of the Clerk of the County of Queens on November 7, 2012 under index no. 1742955 |
| Rensselaer County | Docketed in the office of the Clerk of the County of Rensselaer on November 5, 2012 |
| Richmond County | Docketed in the office of the Clerk of the County of Richmond on November 9, 2012 |

8

| | |
|---|---|
| Rockland County | Docketed in the office of the Clerk of the County of Rockland on November 5, 2012 under index no. 2012-00039735 |
| Saratoga County | Docketed in the office of the Clerk of the County of Saratoga on November 5, 2012 under index no. 2012041484 |
| Schenectady County | Docketed in the office of the Clerk of the County of Schenectady on November 5, 2012 under index no. Cous/405/524 |
| Schoharie County | Docketed in the office of the Clerk of the County of Schoharie on November 5, 2012 under index no. 14273 |
| Schuyler County | Docketed in the office of the Clerk of the County of Schuyler on November 5, 2012 |
| Seneca County | Docketed in the office of the Clerk of the County of Seneca on November 5, 2012 under index no. 6460 |
| Steuben County | Docketed in the office of the Clerk of the County of Steuben on November 8, 2012 under index no. 2012-2837 |
| St. Lawrence County | Docketed in the office of the Clerk of the County of St. Lawrence on November 5, 2012 under index no. R-2012-00017822 |
| Suffolk County | Docketed in the office of the Clerk of the County of Suffolk on November 5, 2012 under index no. 12-0125826 |
| Sullivan County | Docketed in the office of the Clerk of the County of Sullivan on November 5, 2012 under index no. 2012-6150 |
| Tioga County | Docketed in the office of the Clerk of the County of Tioga on November 5, 2012 under index no. 6964-12-T, CJ029591-001 |
| Tompkins County | Docketed in the office of the Clerk of the County of Tompkins on November 5, 2012 under index no. CJ046249-001 |
| Ulster County | Docketed in the office of the Clerk of the County of Ulster on November 5, 2012, Case No. 12-10713 |

9

| | |
|---|---|
| Warren County | Docketed in the office of the Clerk of the County of Warren on November 6, 2012 under index no. 7103778 |
| Washington County | Docketed in the office of the Clerk of the County of Washington on November 5, 2012 in judgment book 248, page No. 78 |
| Wayne County | Docketed in the office of the Clerk of the County of Wayne on November 15, 2012, Index No. L-539393 |
| Westchester County | Docketed in the office of the Clerk of the County of Westchester on November 5, 2012 under index no. T007853-12 |
| Wyoming County | Docketed in the office of the Clerk of the County of Wyoming on November 8, 2012 under index no. 2235740 |
| Yates County | Docketed in the office of the Clerk of the County of Yates on November 5, 2012 under index no. 14187 |

13.    Judgment Lien:  Certificate of Judgment Lien against Stryker Energy, LLC in favor of Amegy Bank National Association, as Agent, filed and recorded as follows:

### OHIO

| | |
|---|---|
| Adams County | Filed in the Common Pleas Court of Adams County, Ohio, as Case No. 20120697, Judgment Lien No. JL 20120697, on November 13, 2012 |
| Allen County | Filed in the Common Pleas Court of Allen County, Ohio, as Case No. FJ 2012 0007, Judgment Lien No. JD 2012 1066, on November 7, 2012 |
| Ashland County | Filed in the Common Pleas Court of Ashland County, Ohio, as Case No. 12-FJ-003, Judgment Lien No. 12-CJ-0027, on November 8, 2012 |
| Ashtabula County | Filed in the Common Pleas Court of Ashtabula County, Ohio, Judgment Lien No. 2012 JD 1584, on November 21, 2012 |
| Athens County | Filed in the Common Pleas Court of Athens County, Ohio, as Case No. 12 CI 0414, Judgment Lien No. 12 CJ 0519, on November 7, 2012 |
| Auglaize County | Filed in the Common Pleas Court of Auglaize County, Ohio, |

10

|                    | as Case No. 2012 MISC 0057, Judgment Lien No. 2012 CJ 0359, on November 7, 2012 |
|--------------------|---------------------------------------------------------------------------------|
| Belmont County     | Filed in the Common Pleas Court of Belmont County, Ohio, as Case No. 12 CV 0503, Judgment Lien No. 13 CJ 16226, on January 11, 2013 |
| Brown County       | Filed in the Common Pleas Court of Brown County, Ohio, as Case No. CVH-2012-1141, Judgment Lien No. JL 2012 5198, on December 10, 2012 |
| Butler County      | Filed in the Common Pleas Court of Butler County, Ohio, Judgment Lien No. JD 2012 11 2696, on November 7, 2012 |
| Carroll County     | Filed in the Common Pleas Court of Carroll County, Ohio, Judgment Lien No. 2012 CJ 15/613, on November 8, 2012 |
| Champaign County   | Filed in the Common Pleas Court of Champaign County, Ohio, as Case No. 12 CV 323, Judgment Lien No. 12 CJ 687, November 9, 2012 |
| Clark County       | Filed in the Common Pleas Court of Clark County, Ohio, Judgment Lien No. 12 FJ 1112, on November 7, 2012 |
| Clermont County    | Filed in the Common Pleas Court of Clermont County, Ohio, Judgment Lien No. 2012 EX 016324, on November 7, 2012 |
| Clinton County     | Filed in the Common Pleas Court of Clinton County, Ohio, as Case No. CVH 2012 0727, Judgment Lien No. 21231363JL, on November 7, 2012 |
| Columbiana County  | Filed in the Common Pleas Court of Columbiana County, Ohio, as Case No. 12 EX 0013, Judgment Lien No. 2012 JL 02775, on November 21, 2012 |
| Coshocton County   | Filed in the Common Pleas Court of Coshocton County, Ohio, as Case No. 2012 CI 0514, Judgment Lien No. 2012 JLD 25/131, on December 7, 2012 |
| Crawford County    | Filed in the Common Pleas Court of Crawford County, Ohio, Judgment Lien No. 12 CJ 0951, on November 7, 2012 |
| Cuyahoga County    | Filed in the Common Pleas Court of Cuyahoga County, Ohio, as Case No. CV 12-794142, Judgment Lien No. JL-12-544458, on October 23, 2012 |

| | |
|---|---|
| Darke County | Filed in the Common Pleas Court of Darke County, Ohio, as Case No. 12 CV 00716, Judgment Lien No. 12 CJ 00703, on November 7, 2012 |
| Defiance County | Filed in the Common Pleas Court of Defiance County, Ohio, as Case No. 12 CJ 00459, Judgment Lien No. 12 CJ 00460, on November 7, 2012 |
| Delaware County | Filed in the Common Pleas Court of Delaware County, Ohio, Judgment Lien No. 12-CJ-56434, on November 8, 2012 |
| Erie County | Filed in the Common Pleas Court of Erie County, Ohio, as Case No. 2012 CV 0835, Judgment Lien No. 2012 CJ 846, on December 12, 2012 |
| Fairfield County | Filed in the Common Pleas Court of Fairfield County, Ohio, as Case No. 12 MI 10, Judgment Lien No. 2012 JD 02705, on November 15, 2012 |
| Fayette County | Filed in the Common Pleas Court of Fayette County, Ohio, as Case No. 12 FJ 002, Judgment Lien No. 12 JL 00671, on November 7, 2012 |
| Franklin County | Filed in the Common Pleas Court of Franklin County, Ohio, Judgment Lien No. 12 JG 042418, on November 7, 2012 |
| Fulton County | Filed in the Common Pleas Court of Fulton County, Ohio, as Case No. 12 FJ 7, Judgment Lien No. 12 CJ 001083, on November 14, 2012 |
| Gallia County | Filed in the Common Pleas Court of Gallia County, Ohio, as Case No. 12 MS 14, Judgment Lien No. 12 CJ 867, on November 8, 2012 |
| Geauga County | Filed in the Common Pleas Court of Geauga County, Ohio, as Case No. 12M1114, Judgment Lien No. 12CJ000107, on November 7, 2012 |
| Greene County | Filed in the Common Pleas Court of Greene County, Ohio, as Case No. 2012 FJ 0011, Judgment Lien No. 2013 CJ 0012, on January 3, 2013 |
| Guernsey County | Filed in the Common Pleas Court of Guernsey County, Ohio, Judgment Lien No. 12-JL-014153, on November 7, 2012 |

| | |
|---|---|
| Hamilton County | Filed in the Common Pleas Court of Hamilton County, Ohio, Judgment Lien No. CJ12026308, on November 9, 2012 |
| Hancock County | Filed in the Common Pleas Court of Hancock County, Ohio, as Case No. 2012 CV 601, Judgment Lien No. 2012 CJ 762, on November 8, 2012 |
| Hardin County | Filed in the Common Pleas Court of Hardin County, Ohio, as Case No. 2012 1218-CVH, Judgment Lien No. 20125022, on November 7, 2012 |
| Harrison County | Filed in the Common Pleas Court of Harrison County, Ohio, Judgment Lien No. FJ 5/732, on November 7, 2012 |
| Henry County | Filed in the Common Pleas Court of Henry County, Ohio, as Case No. 26 13, Judgment Lien No. 26 14, on November 7, 2012 |
| Highland County | Filed in the Common Pleas Court of Highland County, Ohio, as Case No. 12 CV 0453, Judgment Lien No. 12 CJ 0613, on November 7, 2012 |
| Hocking County | Filed in the Common Pleas Court of Hocking County, Ohio, as Case No. 12 CV 0272, Judgment Lien No. 12 CJ 0837, on December 31, 2012 |
| Holmes County | Filed in the Common Pleas Court of Holmes County, Ohio, as Case No. 12 CV 140, Journal No. 7, page 391, on November 7, 2012 |
| Huron County | Filed in the Common Pleas Court of Huron County, Ohio, Judgment Lien No. F/J 2012-04, on December 7, 2012 |
| Jackson County | Filed in the Common Pleas Court of Jackson County, Ohio, as Case No. 12CIV 0193, Docket 38, Page 463, on November 8, 2012 |
| Jefferson County | Filed in the Common Pleas Court of Jefferson County, Ohio, Judgment Lien No. 12CJ00538, Docket 23, Page 819, on November 7, 2012 |
| Knox County | Filed in the Common Pleas Court of Knox County, Ohio, as Case No. 12FC11-0006, Judgment Lien No. 12CJ11-1689, on November 7, 2012 |

| | |
|---|---|
| Lake County | Filed in the Common Pleas Court of Lake County, Ohio, as Case No. 12FJ 000015, Judgment Lien No. 12 JL 006344, on December 21, 2012 |
| Lawrence County | Filed in the Common Pleas Court of Lawrence County, Ohio, as Case No. 12FJ001360, Judgment Lien No. 12 JL 1510, on December 10, 2012 |
| Licking County | Filed in the Common Pleas Court of Licking County, Ohio, as Case No. 12 CV 1476, Judgment Lien No. 2012 JD 162343, on December 20, 2012 |
| Logan County | Filed in the Common Pleas Court of Logan County, Ohio, as Case No. CV 12 11 0480, Judgment Lien No. JD12-11-0359, on November 13, 2012 |
| Lorain County | Filed in the Common Pleas Court of Lorain County, Ohio, as Case No. 12 CV 178451, Judgment Lien No. 12 CJ 064422, on December 17, 2012 |
| Lucas County | Filed in the Common Pleas Court of Lucas County, Ohio, as Case No. LN-2012-13702, Judgment Lien No. G-4801-LN-0201213702-000, on December 31, 2012 |
| Madison County | Filed in the Common Pleas Court of Madison County, Ohio, Judgment Lien No. JL22577, on November 8, 2012 |
| Mahoning County | Filed in the Common Pleas Court of Mahoning County, Ohio, as Case No. 2012 FJ 00033, Judgment Lien No. 12 JD 4924, on December 17, 2012 |
| Marion County | Filed in the Common Pleas Court of Marion County, Ohio, as Case No. 2012 CV 0756, Judgment Lien No. 2012 CJ 0978, on December 10, 2012 |
| Medina County | Filed in the Common Pleas Court of Medina County, Ohio, as Case No. 12 CIV 1646, Judgment Lien No. JL-75-654, on November 8, 2012 |
| Meigs County | Filed in the Common Pleas Court of Meigs County, Ohio, as Case No. 12 CV 111, Judgment Lien No. 12 CJ 0245, on November 9, 2012 |
| Mercer County | Filed in the Common Pleas Court of Mercer County, Ohio, as Case No. 12-CJD-20012, Judgment Lien No. 12 CJD 20085, on December 11, 2012 |

14

| | |
|---|---|
| Miami County | Filed in the Common Pleas Court of Miami County, Ohio, as Case No. 12-749, Judgment Lien No. 12 JD 795, on November 13, 2012 |
| Monroe County | Filed in the Common Pleas Court of Monroe County, Ohio, Judgment Lien No. JL2012-378, on December 13, 2012 |
| Montgomery County | Filed in the Common Pleas Court of Montgomery County, Ohio, Judgment Lien No. 2012 CJ 186788, on November 14, 2012 |
| Morgan County | Filed in the Common Pleas Court of Morgan County, Ohio, as Case No. 12 CV 0204, Judgment Lien No. 12 CJ 0209, on December 17, 2012 |
| Morrow County | Filed in the Common Pleas Court of Morrow County, Ohio, as Case No. 2012 CV 00567, Judgment Lien No. 2012 CJ 00567, on November 7, 2012 |
| Muskingum County | Filed in the Common Pleas Court of Muskingum County, Ohio, Judgment Lien No. 2012 FJ 00002, on November 9, 2012 |
| Noble County | Filed in the Common Pleas Court of Noble County, Ohio, as Judgment Lien No. JL 212-0242, on November 8, 2012 |
| Ottawa County | Filed in the Common Pleas Court of Ottawa County, Ohio, as Case No. 12CV-569H, Judgment Lien No. 36 CJ 265, on November 9, 2012 |
| Paulding County | Filed in the Common Pleas Court of Paulding County, Ohio, Judgment Lien No. CJ12-171, on November 8, 2012 |
| Perry County | Filed in the Common Pleas Court of Perry County, Ohio, as Case No. 12-FJ-00002, Judgment Lien No. 12-CJ-00221, on November 26, 2012 |
| Pickaway County | Filed in the Common Pleas Court of Pickaway County, Ohio, Judgment Lien No. 2012CJ1596, on November 14, 2012 |
| Pike County | Filed in the Common Pleas Court of Pike County, Ohio, as Case No. 2012 FJ000398, Judgment Lien No. 2012CJ000608, on November 7, 2012 |

15

| | |
|---|---|
| Portage County | Filed in the Common Pleas Court of Portage County, Ohio, Judgment Lien No. 2012 JD 03399, on November 7, 2012 |
| Preble County | Filed in the Common Pleas Court of Preble County, Ohio, as Case No. 12FJ000024, Judgment Lien No. 12CJ1496, on November 14, 2012 |
| Putnam County | Filed in the Common Pleas Court of Putnam County, Ohio, as Case No. 2012 CV 00252, Judgment Lien No. 2012 JL 00474, on November 8, 2012 |
| Richland County | Filed in the Common Pleas Court of Richland County, Ohio, Judgment Lien No. 2012 CJ 77 721, on November 28, 2012 |
| Ross County | Filed in the Common Pleas Court of Ross County, Ohio, as Case No. 12-000728, Judgment Lien No. 12OOS000008, on November 8, 2012 |
| Sandusky County | Filed in the Common Pleas Court of Sandusky County, Ohio, Judgment Lien No. 12CJ1736, on November 8, 2012 |
| Scioto County | Filed in the Common Pleas Court of Scioto County, Ohio, Judgment Lien No. 12FC001630, Judgment Docket 45, Page 518, on November 7, 2012 |
| Seneca County | Filed in the Common Pleas Court of Seneca County, Ohio, as Case No. 12CV0425, Judgment Lien No. 12-CJ-1373, on December 10, 2012 |
| Shelby County | Filed in the Common Pleas Court of Shelby County, Ohio, as Judgment Lien No. 12 JL 000860, on November 8, 2012 |
| Stark County | Filed in the Common Pleas Court of Stark County, Ohio, as Case No. 2012FE 00023, Judgment Lien No. 2012JG 08810, on November 16, 2012 |
| Summit County | Filed in the Common Pleas Court of Summit County, Ohio, as Case No. CV 2012-11-6340, Judgment Lien No. JL-2012-15825, on December 28, 2012 |
| Trumbull County | Filed in the Common Pleas Court of Trumbull County, Ohio, as Case No. 2012 FJ 00026, Judgment Lien No. 2012 JL 245090, on October 23, 2012 |

16

| | |
|---|---|
| Trumbull County | Filed in the Common Pleas Court of Trumbull County, Ohio, as Case No. 2012 FJ 00026, Judgment Lien No. 2012 JL 246061, on December 19, 2012 |
| Tuscarawas County | Filed in the Common Pleas Court of Tuscarawas County, Ohio, as Case No. 2012 FJ-11-0002, Judgment Lien No. 2012 CJ 0704, on December 13, 2012 |
| Union County | Filed in the Common Pleas Court of Union County, Ohio, as Judgment Lien No. 2012CJ0972, on November 9, 2012 |
| Van Wert County | Filed in the Common Pleas Court of Van Wert County, Ohio, as Case No. CV12-11-287, Judgment Lien No. CJ-12-181, on December 10, 2012 |
| Vinton County | Filed in the Common Pleas Court of Vinton County, Ohio, as Judgment Lien No. 12ST13238, on November 13, 2012 |
| Warren County | Filed in the Common Pleas Court of Warren County, Ohio, as Case No. 12CV 83233, Judgment Lien No. 12CJ-12-0402, on December 28, 2012 |
| Washington County | Filed in the Common Pleas Court of Washington County, Ohio, Judgment Lien No. 12JL754, on November 7, 2012 |
| Wayne County | Filed in the Common Pleas Court of Wayne County, Ohio, as Case No. MISC 12-078, Judgment Lien No. 12-111226, on November 7, 2012 |
| Williams County | Filed in the Common Pleas Court of Williams County, Ohio, as Case No. 12FJ000005, Judgment Lien No. 12CJ000460, on November 8, 2012 |
| Wood County | Filed in the Common Pleas Court of Wood County, Ohio, as Case No. 2012 FJ 0009, Judgment Lien No. 2012 JL 1265, on December 20, 2012 |
| Wyandot County | Filed in the Common Pleas Court of Wyandot County, Ohio, as Case No. 12 CV 0119, Judgment Lien No. 12 CJ 0537, on November 8, 2012 |

14.    Judgment Lien:  Judgment Lien against Stryker Energy, LLC in favor of Amegy Bank National Association, as Agent, filed and recorded as follows:

**PENNSYLVANIA**

| | |
|---|---|
| Adams County | Filed in the Court of Common Pleas of Adams County, Pennsylvania, Civil Action - Law as NO. 12-N-1241 |
| Allegheny County | Filed in the Court of Common Pleas of Allegheny County, Pennsylvania, Civil Action - Law as NO. GD 2012-21724 |
| Armstrong County | Filed in the Court of Common Pleas of Armstrong County, Pennsylvania, Civil Action - Law as NO. 2012-1610-Civil |
| Beaver County | Filed in the Court of Common Pleas of Beaver County, Pennsylvania, Civil Action - Law as NO. 32760-2012 |
| Bedford County | Filed in the Court of Common Pleas of Bedford County, Pennsylvania, Civil Action - Law as NO. 1316-2012 |
| Berks County | Filed in the Court of Common Pleas of Berks County, Pennsylvania, Civil Action - Law as NO. 2012-24049 |
| Blair County | Filed in the Court of Common Pleas of Blair County, Pennsylvania, Civil Action - Law as NO. 2012 CIV 3591 |
| Bradford County | Filed in the Court of Common Pleas of Bradford County, Pennsylvania, Civil Action - Law as NO. 12JG 001544 |
| Bucks County | Filed in the Court of Common Pleas of Bucks County, Pennsylvania, Civil Action - Law as NO. 2012-09640 |
| Butler County | Filed in the Court of Common Pleas of Butler County, Pennsylvania, Civil Action - Law as NO. 2012-22112 |
| Cambria County | Filed in the Court of Common Pleas of Cambria County, Pennsylvania, Civil Action - Law as NO. 2012-4245 |
| Cameron County | Filed in the Court of Common Pleas of Cameron County, Pennsylvania, Civil Action - Law as NO. 2012-1963 |
| Carbon County | Filed in the Court of Common Pleas of Carbon County, Pennsylvania, Civil Action - Law as NO. 2012-2362 |
| Centre County | Filed in the Court of Common Pleas of Centre County, Pennsylvania, Civil Action - Law as NO. 2012-4159 |

| | |
|---|---|
| Chester County | Filed in the Court of Common Pleas of Chester County, Pennsylvania, Civil Action - Law as NO. 2012-11616 |
| Clarion County | Filed in the Court of Common Pleas of Clarion County, Pennsylvania, Civil Action - Law as NO. 1150-2012 |
| Clearfield County | Filed in the Court of Common Pleas of Clearfield County, Pennsylvania, Civil Action - Law as NO. 2012-1688-CD |
| Clinton County | Filed in the Court of Common Pleas of Clinton County, Pennsylvania, Civil Action - Law as NO. 1323-12 |
| Columbia County | Filed in the Court of Common Pleas of Columbia County, Pennsylvania, Civil Action - Law as NO. 2012-CV-1637 |
| Crawford County | Filed in the Court of Common Pleas of Crawford County, Pennsylvania, Civil Action - Law as NO. DSB 2012-876 |
| Cumberland County | Filed in the Court of Common Pleas of Cumberland County, Pennsylvania, Civil Action - Law as NO. 12-6819 Civil |
| Dauphin County | Filed in the Court of Common Pleas of Dauphin County, Pennsylvania, Civil Action - Law as NO. 2012-CV-9633-NT |
| Delaware County | Filed in the Court of Common Pleas of Delaware County, Pennsylvania, Civil Action - Law as NO. 2012-9202 |
| Elk County | Filed in the Court of Common Pleas of Elk County, Pennsylvania, Civil Action - Law as NO. 2012-916 |
| Erie County | Filed in the Court of Common Pleas of Erie County, Pennsylvania, Civil Action - Law as NO. 13594-12 |
| Fayette County | Filed in the Court of Common Pleas of Fayette County, Pennsylvania, Civil Action - Law as NO. 2454 F 2012 DSB |
| Forest County | Filed in the Court of Common Pleas of Forest County, Pennsylvania, Civil Action - Law as NO. 162 of 2012 |
| Franklin County | Filed in the Court of Common Pleas of Franklin County, Pennsylvania, Civil Action - Law as NO. 2012-4424 |
| Fulton County | Filed in the Court of Common Pleas of Fulton County, Pennsylvania, Civil Action - Law as NO. 2012-00446 |

19

| | |
|---|---|
| Greene County | Filed in the Court of Common Pleas of Greene County, Pennsylvania, Civil Action - Law as NO. AD 1105-2012 |
| Huntingdon County | Filed in the Court of Common Pleas of Huntingdon County, Pennsylvania, Civil Action - Law as NO. 2012-1560 |
| Indiana County | Filed in the Court of Common Pleas of Indiana County, Pennsylvania, Civil Action - Law as NO. 31956 CD 2012 |
| Jefferson County | Filed in the Court of Common Pleas of Jefferson County, Pennsylvania, Civil Action - Law as NO. 979-2012-CD |
| Juniata County | Filed in the Court of Common Pleas of Juniata County, Pennsylvania, Civil Action - Law as NO. 456 of 2012 |
| Lackawanna County | Filed in the Court of Common Pleas of Lackawanna County, Pennsylvania, Civil Action - Law as NO. 2012-CV-6548 |
| Lancaster County | Filed in the Court of Common Pleas of Lancaster County, Pennsylvania, Civil Action - Law as NO. 2012-16778 |
| Lawrence County | Filed in the Court of Common Pleas of Lawrence County, Pennsylvania, Civil Action - Law as NO. 2130/12 DSB |
| Lebanon County | Filed in the Court of Common Pleas of Lebanon County, Pennsylvania, Civil Action - Law as NO. 2012-02326 |
| Lehigh County | Filed in the Court of Common Pleas of Lehigh County, Pennsylvania, Civil Action - Law as NO. 2012 N 1657 |
| Luzerne County | Filed in the Court of Common Pleas of Luzerne County, Pennsylvania, Civil Action - Law as NO. 2012-15534 |
| Lycoming County | Filed in the Court of Common Pleas of Lycoming County, Pennsylvania, Civil Action - Law as NO. 12-02413 |
| McKean County | Filed in the Court of Common Pleas of McKean County, Pennsylvania, Civil Action - Law as NO. 1397 CV 2012 |
| Mercer County | Filed in the Court of Common Pleas of Mercer County, Pennsylvania, Civil Action - Law as NO. 2012-3300 |
| Mifflin County | Filed in the Court of Common Pleas of Mifflin County, Pennsylvania, Civil Action - Law as NO. CP.44.CV.1324. 2012 |

20

| | |
|---|---|
| Monroe County | Filed in the Court of Common Pleas of Monroe County, Pennsylvania, Civil Action - Law as NO. 9448 Civil 2012 |
| Montgomery County | Filed in the Court of Common Pleas of Montgomery County, Pennsylvania, Civil Action - Law as NO. 2012-29357 |
| Montour County | Filed in the Court of Common Pleas of Montour County, Pennsylvania, Civil Action - Law as NO. 455-2012 |
| Northampton County | Filed in the Court of Common Pleas of Northampton County, Pennsylvania, Civil Action - Law as NO. C-48-CV-2012-11306 |
| Northumberland County | Filed in the Court of Common Pleas of Northumberland County, Pennsylvania, Civil Action - Law as NO. CV-2012-2076 |
| Perry County | Filed in the Court of Common Pleas of Perry County, Pennsylvania, Civil Action - Law as NO. 1078 |
| Philadelphia County | Filed in the Court of Common Pleas of Philadelphia County, Pennsylvania, Civil Action - Law as NO. 121100342 |
| Pike County | Filed in the Court of Common Pleas of Pike County, Pennsylvania, Civil Action - Law as NO. 45840-2012 |
| Potter County | Filed in the Court of Common Pleas of Potter County, Pennsylvania, Civil Action - Law as NO. 2012-532 |
| Schuylkill County | Filed in the Court of Common Pleas of Schuylkill County, Pennsylvania, Civil Action - Law as NO. J-4407-12 |
| Snyder County | Filed in the Court of Common Pleas of Snyder County, Pennsylvania, Civil Action - Law as NO. JD-175-2012, Sur #4:12-CV-01815 |
| Somerset County | Filed in the Court of Common Pleas of Somerset County, Pennsylvania, Civil Action - Law as NO. 1029 Judgment 2012 |
| Sullivan County | Filed in the Court of Common Pleas of Sullivan County, Pennsylvania, Civil Action - Law as NO. 2012 CV 297 |
| Susquehanna County | Filed in the Court of Common Pleas of Susquehanna County, Pennsylvania, Civil Action - Law as NO. 2012-2041 CP |

Tioga County                    Filed in the Court of Common Pleas of Tioga County, Pennsylvania, Civil Action - Law as NO. 989 CV 2012

Union County                    Filed in the Court of Common Pleas of Union County, Pennsylvania, Civil Action - Law as NO. 120780

Venango County                  Filed in the Court of Common Pleas of Venango County, Pennsylvania, Civil Action - Law as NO. 1392-2012

Warren County                   Filed in the Court of Common Pleas of Warren County, Pennsylvania, Civil Action - Law as NO. 936

Washington County               Filed in the Court of Common Pleas of Washington County, Pennsylvania, Civil Action - Law as NO. 2012-7438

Wayne County                    Filed in the Court of Common Pleas of Wayne County, Pennsylvania, Civil Action - Law as NO. 2012-NO-006538-32

Westmoreland County             Filed in the Court of Common Pleas of Westmoreland County, Pennsylvania, Civil Action - Law as NO. 6574 of 2012

Wyoming County                  Filed in the Court of Common Pleas of Wyoming County, Pennsylvania, Civil Action - Law as NO. 2012-1220

York County                     Filed in the Court of Common Pleas of York County, Pennsylvania, Civil Action - Law as NO. 1504 Judg 2012

17224214v.1

Exhibit A

Description of the Assets

The "Assets" consist of the following:

(a)     All of Seller's undivided Working Interests, carried interests, reversionary interests, possibilities of reverter, conversion rights and options, and other interests of every kind and character (including rights under non-consent provisions) (but excluding Excluded Assets), whether owned of record or beneficially, in, to, under, or derived from (i) the oil and gas leases described more particularly in Exhibit A-1 and the oil and gas leasehold estates created thereby, as to all of the lands and depths covered thereby, or the applicable part or portion thereof if specifically limited in depth and/or geographic extent in Exhibit A-1, including any limitation of an oil and gas lease to the extent it covers a particularly described wellbore on the acreage covered by the relevant oil and gas lease (collectively, the "Leases"), and (ii) the wellbores for the oil and gas wells also listed in Exhibit A-1, located on the lands covered by the Leases or included in the Units (the "Wells"), together with any and all other rights, interests, privileges, benefits, and powers of any kind or character conferred upon Seller as the owner of any such interests (except for Excluded Assets);

(b)     all of Seller's rights, titles, and interests in, to or arising under (i) all pooling, unitization, or communitization declarations, designations, agreements, orders of a Governmental Authority, or other documents, agreements, or evidence of governmental action pursuant to which any Unit that includes all or a portion of any Lease or the lands covered thereby, (ii) all Units created thereby and (iii) the other oil and gas leases and lands included in each such Unit (except for Excluded Assets) and all of Seller's rights, titles and interests in, to or arising under any Joint Operating Agreement the contract area of which includes all or a portion of any Lease or the lands covered thereby and to which Seller is a party or to which Seller's interest in all or a portion of any Lease or the lands covered thereby is otherwise subject;

(c)     all of Seller's rights, titles, and interests in and to all Hydrocarbons that are produced from or allocable to the interests of Seller described in clause (a) and clause (b), respectively, of this definition, for the period from and after the Effective Time, and all proceeds from the sale thereof;

(d)     all of Seller's rights, titles, and interests in and to all Personal Property owned or used in connection with the interests of Seller described in clause (a), clause (b), and clause (c), respectively, of this definition;

(e)     all of Seller's rights, titles, and interests in and to the Contracts;

(f)     all of Seller's rights, titles, and interests in and to all Intangible Rights, insofar only as such Intangible Rights relate or are attributable to the items listed in this definition, pertain to Claims arising out of or resulting from acts, omissions, or events occurring after the Effective Time and do not constitute Excluded Assets; and

(g)     all of Seller's right, title, and interest in and to any funds in the Herkimer Escrow, but only to the extent not constituting a part of the Excluded Assets.

Exhibit A

Exhibit A-1

Leases and Wells; Units

**(See following pages)**


**(Balance of page intentionally left blank)**

Exhibit A-1

## LEASES

Those Oil and Gas Leases or Oil, Gas and Mineral Leases which are listed below or which are the subject of the Partial Assignments of Oil and Gas Leases listed below.

| Lessor Name & Address | Oil and Gas Lease | Parcel Number | Partial Assignment |
|---|---|---|---|
| Marie A. Abood<br>14365 Cedar Rd.<br>South Euclid, OH 44121 | 2004-017697 | 31-054-117-002 | 2012-00011497 |
| Mark A. & Susan L. Black<br>8466 Summit Rd.<br>Transfer, PA. 16154 | 2004-017694 | 28-080-033 | 2012-00011494 |
| Jay and Kimberly Bonadio<br>314 Shenango Park Road<br>Transfer, PA 16154 | 2010-00011253 | 23-094-0289 | 2012-00011496 |
| Raymond & Patricia J. Brest Jr.<br>119 Hilltop Rd.<br>Greenville, PA 16125 | 2003-015212 | 31-067-008 | 2012-00011490 |
| Gifford Bridenbaugh , et al<br>182 S. Barry Rd.<br>Greenville PA 16125 | 2005-008978 | 31-066-018 | 2012-00011489 |
| Paul & Connie M. Cordell<br>111 South Marysville Rd.<br>Greenville PA 16125 | 2005-00012477 | 31-054-120<br>31-054-121 | 2012-00011493 |
| William A. & Sophie Cusick<br>110 Stateline Rd.<br>Greenville PA 16125 | 2010-00008406<br>RE-RECORDED<br>2011-00002047 | 31-066-027 | 2012-00011508 |
| Samuel E. & Tina M. Dailey<br>331 Coal Hill Rd.<br>Greenville PA 16125 | 2003-015219<br>2011-00002046 | 31-068-063<br>31-068-041-003 | 2012-00016013 |
| Jerry W. & Patricia N. Diehl<br>2907 Carlisle Rd.<br>Transfer PA 16125 | 2003-018689 | 28-080-020 | 2012-00011495 |
| Michael Dorfi, et al<br>2959 Frampton Rd.<br>Hermitage PA 16148 | 2003-018691 | 31-080-003 | 2012-00011498 |
| Michael Dorfi, et al<br>2959 Frampton Rd.<br>Hermitage PA 16148 | 2003-018691 | 31-080-003 | 2012-00011505 |
| Michael Dorfi, et al<br>2959 Frampton Rd.<br>Hermitage PA 16148 | 2003-018691 | 31-080-003 | 2012-00011506 |
| Ronald L. & Linda D. Ealy<br>423 S. Marysville Rd.<br>Greenville PA 16125 | 2003-015214 | 31-068-033 | 2012-00011499 |
| Ronald L. & Linda D. Ealy<br>423 S. Marysville Rd.<br>Greenville PA 16125 | 2003-015214 | 31-068-033 | 2012-00011504 |
| Gary L. & Pamela J. Hanson<br>796 Vernon Rd.<br>Greenville PA 16125 | 2004-000094<br>2004-000098<br>2004-000099 | 31-054-061-001<br>31-054-040<br>31-054-117-001 | 2012-00011500 |

Exhibit A-1-i

| | | | |
|---|---|---|---|
| Lucille Hawkins<br>220 S. Good Hope Rd.<br>Greenville Rd. 16125 | 2003-15216 | 31-068-040 | 2012-00011501 |
| Kenneth and Anne Hockett<br>125 Bassick Lane<br>Transfer, PA 16154 | 2011-00003635 | 23-081-030 | 2012-00011491 |
| Kenneth and Anne Hockett<br>125 Bassick Lane<br>Transfer, PA 16154 | 2011-00003635 | 23-081-030 | 2012-00011492 |
| Kenneth and Anne Hockett<br>125 Bassick Lane<br>Transfer, PA 16154 | 2011-00003635 | 23-081-030 | 2012-00011507 |
| Sandra Holbrook , et al<br>94 Church  Road<br>Greenville, PA 16125 | 2010-00010127 | 31-054-082 | 2012-00011503 |
| William Kettering<br>351 Orangeville Rd<br>Greenville PA 16125 | 2003-15211 | 31-068-001 | 2012-00011502 |
| Ronald Kirila  , et al<br>505 Bedford Rd.<br>Brookfield OH 44403 | 2003-018688 | 31-066-005 | 2012-00013763 |
| Ronald Kirila  , et al<br>505 Bedford Rd.<br>Brookfield OH 44403 | 2003-018688 | 31-066-005 | 2012-00013752 |
| Stephen R.  Lenkner, et al<br>260 Orangeville Road<br>Greenville, PA 16125 | 2011-00001347 | 31-055-209<br>31-055-225 | 2012-00013751 |
| Stephen R.  Lenkner, et al<br>260 Orangeville Road<br>Greenville, PA 16125 | 2011-00001347 | 31-055-209<br>31-055-225 | 2012-00013750 |
| Charles Loutzenhiser<br>31 Hilltop Road<br>Greenville, PA 16125 | 2003-018687 | 31-054-069 | 2012-00013758 |
| Ronald E. Matters<br>2019 Carlisle Road<br>Greenville, PA 16125 | 2010-00011254 | 28-080-006 | 2012-00013762 |
| Lloyd and Theresa McGarvey<br>30 Hickory Road<br>Greenville, PA 16125 | 2011-00003633 | 31-054-012 | 2012-00013757 |
| Richard  & Tammy  Miklos Sr.<br>1163 Darian Rd.<br>Greenville PA 16125 | 2003-018973 | 31-066-038<br>28-079-005 | 2012-00013756 |
| Richard  & Tammy  Miklos Sr.<br>1163 Darian Rd.<br>Greenville PA 16125 | 2010-00009761 | 28-079-002 | 2012-00013760 |
| James A. Mischick<br>3900 Fran Lane<br>Hermitage PA 16148 | 2003-018974<br>2003-018683 | 31-067-057<br>31-067-064 | 2012-00013755 |
| Wallace J. & Barbara J. Phillips<br>6048 Beach Smith Rd.<br>Kinsman OH 44428 | 2007-00001199 | 31-053-039 | 2012-00013754 |

Exhibit A-1-ii

| | | | |
|---|---|---|---|
| Susan C. Rea<br>(part of Russo well)<br>156 S. Stateline Road<br>Greenvile, PA 16125 | 2010-00009758 | 31-066-036<br>31-066-037 | 2012-00013753 |
| Susan C. Rea<br>(part of Russo well)<br>156 S. Stateline Road<br>Greenvile, PA 16125 | 2010-00009758 | 31-066-036<br>31-066-037 | 2012-00013759 |
| Daniel L. & Donna N. Reeher<br>163 Summit Rd.<br>Greenville PA 16125 | 2004-000093 | 31-067-048<br>31-067-047 | 2012-00013761 |
| Daniel L. & Donna N. Reeher<br>163 Summit Rd.<br>Greenville PA 16125 | 2004-000093 | 31-067-048<br>31-067-047 | 2012-00013764 |
| Terry Reeher<br>127 S. Summit Rd.<br>Greenville PA 16125 | 2001-018132 | 31-067-028 | 2012-00016158 |
| Dennis D. & Lucia J. Reynolds<br>12 West Dr.<br>Greenville PA 16125 | 2003-018684 | 31-055-200-001 | 2012-00016143 |
| Henry & Ruth Sewinsky Jr.<br>45 Coulter Rd.<br>Greenville PA 16125 | 2005-8975 | 31-080-001 | 2012-00016147 |
| Henry & Ruth Sewinsky Jr.<br>45 Coulter Rd.<br>Greenville PA 16125 | 2005-8975 | 31-080-001 | 2012-00016141 |
| James and Ethel Slater<br>482 Coal Hill Road<br>Greenville, PA 16125 | 2011-00003634 | 31-068-086 | 2012-00016148 |
| Magdolna Soros<br>70 Hilltop Rd.<br>Greenville PA 16125 | 2010-00008408 | 31-054-117 | 2012-00016011 |
| Robert L. Stein<br>4950 Tamarack Dr.<br>Sharpsville, PA. 16150 | 2010-00010128 | 28-105-064<br>28-105-065.001.000 | 2012-00016149 |
| Frank and Myrna Thompson<br>6954 Main Street<br>Hartstown, PA 16131 | 2004-017693 | 31-066-030 | 2012-00016150 |
| Gino and MaryAnn Tofani<br>1451 Rutledge Road<br>Transfer, PA 16154 | 2010-00011249 | 23-093-019 | 2012-00016151 |
| Gino and MaryAnn Tofani<br>1451 Rutledge Road<br>Transfer, PA 16154 | 2011-00000889 | 23-108-009 | 2012-00016152 |
| William & Patricia Tupper<br>319 S. Maysville Rd.<br>Transfer, PA. 16154 | 2010-00010123 | 23-081-005 | 2012-00016157 |
| Henry and Susan VanZanten<br>4928 Tamarac Drive<br>Sharpsville, PA 16154 | 2010-00011252 | 28-105-084<br>28-105-084.001.000 | 2012-00016016 |

Exhibit A-1-iii

| | | | |
|---|---|---|---|
| Henry and Susan VanZanten<br>4928 Tamarac Drive<br>Sharpsville, PA 16154 | 2010-00011252 | 28-105-084<br>28-105-084-001.000 | 2012-00016156 |
| Henry and Susan VanZanten<br>4928 Tamarac Drive<br>Sharpsville, PA 16154 | 2010-00011252 | 28-105-084<br>28-105-084-001.000 | 2012-00016153 |
| Henry and Susan VanZanten<br>4928 Tamarac Drive<br>Sharpsville, PA 16154 | 2010-00011252 | 28-105-084<br>28-105-084-001.000 | 2012-00016155 |
| Raymond W. & JoAnn L. Werger<br>245 Coal Hill Rd.<br>Greenville PA 16125 | 2003-018977 | 31-068-012<br>31-068-015<br>31-068-016<br>31-068-028 | 2012-00016146 |
| Raymond W. & JoAnn L. Werger<br>245 Coal Hill Rd.<br>Greenville PA 16125 | 2003-018977 | 31-068-012<br>31-068-015<br>31-068-016<br>31-068-028 | 2012-00016154 |
| Howard E. Derr<br>R.D. #1<br>Transfer PA 16154 | 2003-025780 | 28-080-XXX | 2012-00016015 |
| Gerald A. & Mary E. Jones, Jr.<br>1017 Hilltop Rd.<br>Greenville PA 16125 | 2003-015866 | 31-XX-XXX | 2012-00016012 |
| Ronald Kirila<br>79 S. Stateline Rd.<br>Greenville PA 16125 | 2004-002040 | 31-066-12 | 2012-00016145 |
| Jeff Knauff | 2003-018972 | | 2013-00000179 |
| Paul & Connie M. Cordell<br>111 South Marysville Rd.<br>Greenville PA 16125 | 2005-00012477 | 31-054-120<br>31-054-121 | 2013-00000194 |
| William A. & Sophie Cusick<br>110 Stateline Rd.<br>Greenville PA 16125 | 2010-00008406<br>**RE-RECORDED**<br>**2011-00002047** | 31-066-027 | 2013-00000192 |
| William A. & Sophie Cusick<br>110 Stateline Rd.<br>Greenville PA 16125 | 2010-00008406<br>**RE-RECORDED**<br>**2011-00002047** | 31-066-027 | 2013-00000188 |
| Michael Dorfi, et al<br>2959 Frampton Rd.<br>Hermitage PA 16148 | 2003-018691 | 31-080-003 | 2013-00000210 |
| Michael Dorfi, et al<br>2959 Frampton Rd.<br>Hermitage PA 16148 | 2003-018691 | 31-080-003 | 2013-00000209 |
| Michael Dorfi, et al<br>2959 Frampton Rd.<br>Hermitage PA 16148 | 2003-018691 | 31-080-003 | 2013-00000208 |
| Ronald L. & Linda D. Ealy<br>423 S. Marysville Rd.<br>Greenville PA 16125 | 2003-015214 | 31-068-033 | 2013-00000189 |
| Lucille Hawkins<br>220 S. Good Hope Rd.<br>Greenville Rd. 16125 | 2003-15216 | 31-068-040 | 2013-00000174 |

Exhibit A-1-iv

| | | | |
|---|---|---|---|
| Charles Loutzenhiser<br>31 Hilltop Road<br>Greenville, PA 16125 | 2003-018687 | 31-054-069 | 2013-00000193 |
| Ronald E. Matters<br>2019 Carlisle Road<br>Greenville, PA 16125 | 2010-00011254 | 28-080-006 | 2013-00000184 |
| Ronald E. Matters<br>2019 Carlisle Road<br>Greenville, PA 16125 | 2010-00011254 | 28-080-006 | 2013-00000183 |
| Ronald E. Matters<br>2019 Carlisle Road<br>Greenville, PA 16125 | 2010-00011254 | 28-080-006 | 2013-00000182 |
| Richard & Tammy Miklos Sr.<br>1163 Darian Rd.<br>Greenville PA 16125 | 2003-018973 | 31-066-038<br>28-079-005 | 2013-00000181 |
| Richard & Tammy Miklos Sr.<br>1163 Darian Rd.<br>Greenville PA 16125 | 2003-018973 | 31-066-038<br>28-079-005 | 2013-00000180 |
| Richard & Tammy Miklos Sr.<br>1163 Darian Rd.<br>Greenville PA 16125 | 2003-018973 | 31-066-038<br>28-079-005 | 2013-00000178 |
| Richard & Tammy Miklos Sr.<br>1163 Darian Rd.<br>Greenville PA 16125 | 2003-018973 | 31-066-038<br>28-079-005 | 2013-00000186 |
| Richard & Tammy Miklos Sr.<br>1163 Darian Rd.<br>Greenville PA 16125 | 2003-018973 | 31-066-038<br>28-079-005 | 2013-00000177 |
| James A. Mischick<br>3900 Fran Lane<br>Hermitage PA 16148 | 2003-018974<br>2003-018683 | 31-067-057<br>31-067-064 | 2013-00000202 |
| James A. Mischick<br>3900 Fran Lane<br>Hermitage PA 16148 | 2003-018974<br>2003-018683 | 31-067-057<br>31-067-064 | 2013-00000190 |
| Susan C. Rea<br>(part of Russo well)<br>156 S. Stateline Road<br>Greenville, PA 16125 | 2010-00009758 | 31-066-036<br>31-066-037 | 2013-00000191 |
| Susan C. Rea<br>(part of Russo well)<br>156 S. Stateline Road<br>Greenvile, PA 16125 | 2010-00009758 | 31-066-036<br>31-066-037 | 2013-00000203 |
| Daniel L. & Donna N. Reeher<br>163 Summit Rd.<br>Greenville PA 16125 | 2004-000093 | 31-067-048<br>31-067-047 | 2013-00000187 |
| Daniel L. & Donna N. Reeher<br>163 Summit Rd.<br>Greenville PA 16125 | 2004-000093 | 31-067-048<br>31-067-047 | 2013-00000206 |
| Henry & Ruth Sewinsky Jr.<br>45 Coulter Rd.<br>Greenville PA 16125 | 2005-8975 | 31-080-001 | 2013-00000201 |

Exhibit A-1-v

| | | | |
|---|---|---|---|
| Magdolna Soros<br>70 Hilltop Rd.<br>Greenville PA 16125 | 2010-00008408 | 31-054-117 | 2013-00000200 |
| Henry and Susan VanZanten<br>4928 Tamarac Drive<br>Sharpsville, PA 16154 | 2010-00011252 | 28-105-084<br>28-105-084-001.000 | 2013-00000198 |
| Raymond W. & JoAnn L. Werger<br>245 Coal Hill Rd.<br>Greenville PA 16125 | 2003-018977 | 31-068-012<br>31-068-015<br>31-068-016<br>31-068-028 | 2013-00000199 |
| Raymond W. & JoAnn L. Werger<br>245 Coal Hill Rd.<br>Greenville PA 16125 | 2003-018977 | 31-068-012<br>31-068-015<br>31-068-016<br>31-068-028 | 2013-00000197 |
| Raymond W. & JoAnn L. Werger<br>245 Coal Hill Rd.<br>Greenville PA 16125 | 2003-018977 | 31-068-012<br>31-068-015<br>31-068-016<br>31-068-028 | 2013-00000176 |
| Raymond W. & JoAnn L. Werger<br>245 Coal Hill Rd.<br>Greenville PA 16125 | 2003-018977 | 31-068-012<br>31-068-015<br>31-068-016<br>31-068-028 | 2013-00000175 |
| Howard E. Derr<br>R.D. #1<br>Transfer PA 16154 | 2003-025780 | 28-080-XXX | 2013-00000195 |
| Howard E. Derr<br>R.D. #1<br>Transfer PA 16154 | 2003-025780 | 28-080-XXX | 2013-00000185 |
| Gerald A. & Mary E. Jones, Jr.<br>1017 Hilltop Rd.<br>Greenville PA 16125 | 2003-015866 | 31-XX-XXX | 2013-00000196 |

INSOFAR AND ONLY INSOFAR as rights under any of such Oil and Gas Leases or Oil, Gas and Mineral Leases relate to the wells or wellbores listed on the following pages Exhibit A-1-vii through and including Exhibit A-1-xiii.

**(Balance of page intentionally left blank)**

Exhibit A-1-vi

**WELLS**

# Nucomer - Stryker Well Exhibit - REVISED 11/1/16 FOR AMEGY

**Jamestown Wells - 42 Wells**

| API # | Well Name | Field | Reservior | State | County | Town |
|---|---|---|---|---|---|---|
| 31-013-27550-00 | Bower #1 | Jamestown | Medina | NY | Chautauqua | Gerry |
| 31-013-25051-00 | Dean #1 | Jamestown | Medina | NY | Chautauqua | Gerry |
| 31-013-24920-00 | Erickson #1 | Jamestown | Medina | NY | Chautauqua | Harmony |
| 31-013-25489-00 | FSA #1 | Jamestown | Medina | NY | Chautauqua | Portland |
| 31-013-25490-00 | FSA #2 | Jamestown | Medina | NY | Chautauqua | Portland |
| 31-009-25971-00 | Hanson-Ivett | Jamestown | Medina | NY | Cattaraugus | Dayton |
| 31-009-27549-00 | Hanson-Ivett #2 | Jamestown | Medina | NY | Cattaraugus | Dayton |
| 37-123-43997-00 | Hitchcock #1 (PA) | Jamestown | Medina | PA | Warren | Farmington |
| 31-013-24058-00 | Hitchcock, G. | Jamestown | Medina | NY | Chautauqua | Busti |
| 31-013-24150-00 | Jackson #1A | Jamestown | Medina | NY | Chautauqua | Carroll |
| 31-013-25532-00 | Johnson #3 | Jamestown | Medina | NY | Chautauqua | Gerry |
| 31-013-24061-00 | Johnson, H. #2 | Jamestown | Medina | NY | Chautauqua | Kaintone |
| 31-013-24273-00 | Kane #1 | Jamestown | Medina | NY | Chautauqua | Carroll |
| 31-013-25127-00 | Kidder #1 | Jamestown | Medina | NY | Chautauqua | Busti |
| 31-013-24778-00 | Kidder #4 | Jamestown | Medina | NY | Chautauqua | Busti |
| 31-013-24804-00 | King #1 | Jamestown | Medina | NY | Chautauqua | Gerry |
| 31-013-24096-00 | Labarte #3 | Jamestown | Medina | NY | Chautauqua | Busti |
| 37-123-44604-00 | Larson #1 | Jamestown | Medina | PA | Warren | Farmington |
| 37-123-45562-00 | Lauger #1 | Jamestown | Medina | PA | Warren | Freehold |
| 31-013-24075-00 | Marsh #1 | Jamestown | Medina | NY | Chautauqua | Poland |
| 31-013-24062-00 | Mee #3 | Jamestown | Medina | NY | Chautauqua | Poland |
| 31-013-27554-00 | Meeder, R. #1 | Jamestown | Medina | NY | Chautauqua | Ripley |
| 37-123-45561-00 | Morrison #1 | Jamestown | Medina | PA | Warren | Pine Grove[1] |
| 31-013-24856-00 | O'Dell #1 | Jamestown | Medina | NY | Chautauqua | Harmony |

[1] Was listed under Mercer on original paperwork

Exhibit A-1-vii

| | | Field | Reservior | State | County | Town |
|---|---|---|---|---|---|---|
| 31-013-25047-00 | Parker #1 | Jamestown | Medina | NY | Chautauqua | Gerry |
| 31-013-25055-00 | Parker #2 | Jamestown | Medina | NY | Chautauqua | Gerry |
| 31-013-25637-00 | Russo #1 | Jamestown | Medina | NY | Chautauqua | Portland |
| 31-013-25046-00 | Scott #2 | Jamestown | Medina | NY | Chautauqua | Chautauqua |
| 31-013-24086-00 | Searscrest #3 | Jamestown | Medina | NY | Chautauqua | Poland |
| 31-013-24087-00 | Searscrest #4 | Jamestown | Medina | NY | Chautauqua | Poland |
| 37-123-44981-00 | Swanson #1 (PA) | Jamestown | Medina | PA | Warren | Pine Grove |
| 31-013-27746-00 | Swanson Tree Farm | Jamestown | Medina | NY | Chautauqua | Gerry |
| 31-013-24803-00 | Swanson, M. #1 | Jamestown | Medina | NY | Chautauqua | Gerry |
| 31-013-25468-00 | Swanson, M. #2 | Jamestown | Medina | NY | Chautauqua | Gerry |
| 31-013-25469-00 | Swanson, M. #3 | Jamestown | Medina | NY | Chautauqua | Gerry |
| 31-013-27541-00 | Swanson, M. #4 | Jamestown | Medina | NY | Chautauqua | Gerry |
| 37-123-44547-00 | Sweeney #2 | Jamestown | Medina | PA | Warren | Farmington |
| 31-013-24097-00 | Ulrich #1 | Jamestown | Medina | NY | Chautauqua | Carroll |
| 37-123-44635-00 | Vanco #3 | Jamestown | Medina | PA | Warren | Freehold |
| 37-123-44971-00 | Wilson #1 | Jamestown | Medina | PA | Warren | Freehold |
| 37-123-44546-00 | Youngberg #1 | Jamestown | Medina | PA | Warren | Farmington |
| 31-013-25048-00 | Youngberg (NY) | Jamestown | Medina | NY | Chautauqua | Carroll |

**42**

**Linesville Wells - 13 Wells**

| API # | Well Name | Field | Reservior | State | County | Town |
|---|---|---|---|---|---|---|
| 37-039-25171-00 | Brown, R. #1 | Linesville | Medina | PA | Crawford | Conneaut |
| 37-039-24984-00 | Cervi #1 | Linesville | Medina | PA | Crawford | Conneaut |
| 37-039-24986-00 | Davis, J. #1 | Linesville | Medina | PA | Crawford | Pine |
| 37-039-25149-00 | Graham, D. #1 | Linesville | Medina | PA | Crawford | Conneaut |
| 37-039-24982-00 | Grumet #1 | Linesville | Medina | PA | Crawford | Conneaut |
| 37-039-25150-00 | Hackworth, A #1 | Linesville | Medina | PA | Crawford | Conneaut |
| 37-039-24981-00 | Hackworth, J #1 | Linesville | Medina | PA | Crawford | Conneaut |

Exhibit A-1-viii

| API # | Well Name | Field | Reservior | State | County | Town |
|---|---|---|---|---|---|---|
| 37-039-24989-00 | Holeshot #1 | Linesville | Medina | PA | Crawford | Conneaut |
| 37-039-25115-00 | Oates #1 | Linesville | Medina | PA | Crawford | Conneaut |
| 37-039-24983-00 | Stewart, J. #1 | Linesville | Medina | PA | Crawford | Pine |
| 37-039-25170-00 | Troup #1 | Linesville | Medina | PA | Crawford | Conneaut |
| 37-039-25276-00 | Uzarski #1 | Linesville | Medina | PA | Crawford | Conneaut |
| 37-039-24969-00 | Weaver #1 | Linesville | Medina | PA | Crawford | Conneaut |

**13**

**Mercer Wells - 94 Wells**

| API # | Well Name | Field | Reservior | State | County | Town |
|---|---|---|---|---|---|---|
| 37-085-23891-00 | Abood #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23755-00 | Black #1 | Mercer | Medina | PA | Mercer | So. Pymatuning |
| 37-085-24013-00 | Brest #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23854-00 | Bridenbaugh #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24317-00 | Brockway #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23985-00 | Brockway #2 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23842-00 | Brown #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23888-00 | Brown #2 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24223-00 | Brumbaugh #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24224-00 | Brumbaugh #2 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24011-00 | Cordell #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24338-00 | Cordell #2 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24093-00 | Coryea #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24340-00 | Dailey #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24341-00 | DePofi #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24275-00 | Derr #1 | Mercer | Medina | PA | Mercer | So. Pymatuning |
| 37-085-24301-00 | Derr #2 | Mercer | Medina | PA | Mercer | So. Pymatuning |
| 37-085-23696-00 | Diehl #1 | Mercer | Medina | PA | Mercer | So. Pymatuning |
| 37-085-23694-00 | Dorfi #1 | Mercer | Medina | PA | Mercer | West Salem |

Exhibit A-1-ix

| | | | | | | |
|---|---|---|---|---|---|---|
| 37-085-23974-00 | Dorfi #2 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24403-00 | Dorfi #3 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23866-00 | Hanson #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24304-00 | Hanson #2 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23871-00 | Hanson #3 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24339-00 | Hawkins #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24162-00 | Hawkins #2 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24065-00 | Homer #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24276-00 | Jones #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23855-00 | Kantner | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24073-00 | Kettering #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24274-00 | Kettering, G. #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24326-00 | Kirila #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23892-00 | Kirila #2 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24005-00 | Kirila #3 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24104-00 | Kirkland #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23698-00 | Knauff #1 | Mercer | Medina | PA | Mercer | So. Pymatuning |
| 37-085-24010-00 | Knauff #2 | Mercer | Medina | PA | Mercer | So. Pymatuning |
| 37-085-24108-00 | Kosnac #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24042-00 | Leonard #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24277-00 | Leskovac #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23775-00 | Loutzenhiser #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23787-00 | Luplow #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24539-00 | McClimans #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23844-00 | Miklos #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23845-00 | Miklos #2 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24006-00 | Miklos #3 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24077-00 | Miklos #4 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24536-00 | Miller, L. #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23983-00 | Miodrag #1 | Mercer | Medina | PA | Mercer | So. Pymatuning |

Exhibit A-1-x

| | | | | | | |
|---|---|---|---|---|---|---|
| 37-085-23984-00 | Miodrag #2 | Mercer | Medina | PA | Mercer | So. Pymatuning |
| 37-085-23801-00 | Mischick #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23867-00 | Mischick #2 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23889-00 | Mohr #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23798-00 | Mong #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24161-00 | Morrison #1 (NY) | Mercer | Medina | PA | Mercer | West Salem[2] |
| 37-085-24169-00 | Morrison #2 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23916-00 | Moser #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24036-00 | Mott #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24163-00 | Murrin #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24066-00 | Myers #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23853-00 | Palm #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23822-00 | Raiti, C #2 | Mercer | Medina | PA | Mercer | So. Pymatuning |
| 37-085-23823-00 | Raiti, C #3 | Mercer | Medina | PA | Mercer | So. Pymatuning |
| 37-085-23788-00 | Raiti, F #1 | Mercer | Medina | PA | Mercer | So. Pymatuning |
| 37-085-23872-00 | Raiti, F #2 | Mercer | Medina | PA | Mercer | So. Pymatuning |
| 37-085-24043-00 | Raiti, F #3 | Mercer | Medina | PA | Mercer | So. Pymatuning |
| 37-085-24099-00 | Redfoot #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23774-00 | Reeher, D #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24316-00 | Reeher, D #2 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23817-00 | Reeher, T #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24007-00 | Reeher, T #2 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24067-00 | Reynolds, D #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24100-00 | Reynolds, R #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23799-00 | Ross #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23782-00 | Sewinsky #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24160-00 | Slovinsky #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24535-00 | Soros #1 | Mercer | Medina | PA | Mercer | West Salem |

---

[2] Was listed under Jamestown on original paperwork

Exhibit A-1-xi

| 37-085-23908-00 | Stanton #1 | | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23804-00 | Sump, C #1 | | Mercer | Medina | PA | Mercer | So. Pymatuning |
| 37-085-23986-00 | Sump, H #1 | | Mercer | Medina | PA | Mercer | So. Pymatuning |
| 37-085-24069-00 | Sump, R #1 | | Mercer | Medina | PA | Mercer | So. Pymatuning |
| 37-085-23759-00 | Taylor #1 | | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23779-00 | Taylor #2 | | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23856-00 | Tomon #1 | | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23884-00 | Werger #1 | | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24315-00 | Werger #2 | | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24072-00 | Werger #3 | | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23691-00 | Woods, J #1 | | Mercer | Medina | PA | Mercer | Pymatuning |
| 37-085-23697-00 | Woods, T #1 | | Mercer | Medina | PA | Mercer | Pymatuning |
| 37-085-23749-00 | Woods, T #2 | | Mercer | Medina | PA | Mercer | So. Pymatuning |
| 37-085-23994-00 | Yoder #1 | | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24159-00 | Yoder #2 | | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23843-00 | Zimnicki #1 | | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24337-00 | Zimnicki #2 | | Mercer | Medina | PA | Mercer | West Salem |

94

## Trumbull Wells - 7 Wells

| API # | Well Name | Field | Reservior | State | County | Town |
| --- | --- | --- | --- | --- | --- | --- |
| 34-155-2-4009-00 | Lee #1 | Trumbull | Medina | OH | Trumbull | Vernon |
| 34-155-2-3831-00 | Mahaffey #1 | Trumbull | Medina | OH | Trumbull | Vernon |
| 34-155-2-3893-00 | Mahaffey #2 | Trumbull | Medina | OH | Trumbull | Vernon |
| 34-155-2-3917-00 | Paroz #1 | Trumbull | Medina | OH | Trumbull | Hartford |
| 34-155-2-3935-00 | Pelton #1 | Trumbull | Medina | OH | Trumbull | Vernon |
| 34-155-2-4008-00 | Riffe #1 | Trumbull | Medina | OH | Trumbull | Vernon |
| 34-155-2-3884-00 | Saum #1 | Trumbull | Medina | OH | Trumbull | Vernon |

Exhibit A-1-xii

7

**Herkimer Wells - 5 Wells**

| | | Field | Reservoir | State | County | Town |
|---|---|---|---|---|---|---|
| 31-017-26438-00 | Davis, K #1H | Herkimer | Herkimer | NY | Chenango | Smyrna |
| 31-053-26478-00 | DiSciascio #1H | Herkimer | Herkimer | NY | Madison | Lebanon |
| 31-017-26480-00 | Morse #1H | Herkimer | Herkimer | NY | Chenango | Smyrna |
| 31-017-26477-00 | Smyrna Hillbillies #6H | Herkimer | Herkimer | NY | Chenango | Smyrna |
| 31-017-26476-00 | Sweezy, J. #2H | Herkimer | Herkimer | NY | Chenango | Smyrna |

**5**

**161**      **Grand Total Wells**

Exhibit A-1-xiii

## <u>UNITS</u>

None.

Exhibit A-1-xiv

<u>Exhibit B</u>

Form of Conveyance

**(See following pages)**

**(Balance of page intentionally left blank)**

Exhibit B

**NOTICE OF CONFIDENTIALITY RIGHTS:   IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

## ASSIGNMENT OF OIL AND GAS LEASES, WELLBORES AND PORTION OF HERKIMER ESCROW, BILL OF SALE AND CONVEYANCE

| | | |
|---|---|---|
| STATE OF NEW YORK | § | |
| | § | KNOW ALL MEN BY THESE PRESENTS: |
| COUNTIES OF CATTARAUGUS, | § | |
| CHAUTAUQUA, CHENANGO, | § | |
| ERIE, AND MADISON | § | |
| | | |
| STATE OF OHIO | § | |
| | § | |
| COUNTY OF TRUMBULL | § | |
| | | |
| STATE OF PENNSYLVANIA | § | |
| | § | |
| COUNTIES OF CRAWFORD, | § | |
| MERCER AND WARREN | § | |

This Assignment of Oil and Gas Leases, Wellbores, Bill of Sale and Conveyance (this "Assignment"), effective as of the Effective Time, is by and between Stryker Energy, LLC, an Ohio limited liability company ("Assignor"), whose address is 1301 McKinney Street, Suite 2025, Houston, Texas 77010, Attention: Jeff N. Huddleston, and Nucomer Energy, LLC a Pennsylvania limited liability company ("Assignee"), whose address is 558 West 6th Street, Suite 100, Erie, Pennsylvania 16507, Attention: Stephen D. Keyes (collectively, the "Parties").

Assignor, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and subject to the terms set forth herein, does by these presents grant, bargain, sell, convey, assign, transfer, set over, and deliver unto Assignee, all of Assignor's right, title, and interest in, to, and under the following (collectively, the "Assets"):

(a)     all of Seller's undivided Working Interests, carried interests, reversionary interests, possibilities of reverter, conversion rights and options, and other interests of every kind and character (including rights under non-consent provisions) (but excluding Excluded Assets), whether owned of record or beneficially, in, to, under, or derived from (i) the oil and gas leases described more particularly in Exhibit A and the oil and gas leasehold estates created thereby, as to all of the lands and depths covered thereby, or the applicable part or portion thereof if specifically limited in depth and/or geographic extent in Exhibit A, including any limitation of an oil and gas lease to the extent it covers a

particularly described wellbore on the acreage covered by the relevant oil and gas lease (collectively, the "Leases"), and (ii) the wellbores for the oil and gas wells also listed in Exhibit A, located on the lands covered by the Leases or included in the Units (the "Wells"), together with any and all other rights, interests, privileges, benefits, and powers of any kind or character conferred upon Seller as the owner of any such interests (except for Excluded Assets);

(b)     all of Seller's rights, titles, and interests in, to, or arising under (i) all pooling, unitization, or communitization declarations, designations, agreements, orders of a Governmental Authority or other documents, agreements or evidence of governmental action pursuant to which any Unit that includes all or a portion of any Lease or the lands covered thereby, (ii) all Units created thereby and (iii) the other oil and gas leases and lands included in each such Unit (except for Excluded Assets) and all of Seller's rights, titles, and interests in, to, or arising under any Operating Agreement the contract area of which includes all or a portion of any Lease or the lands covered thereby and to which Seller is a party or to which Seller's interest in all or a portion of any Lease or the lands covered thereby is otherwise subject;

(c)     all of Seller's rights, titles, and interests in and to all Hydrocarbons that are produced from or allocable to the interests of Seller described in clause (a) and clause (b), respectively, of this definition, for the period from and after the Effective Time, and all proceeds from the sale thereof;

(d)     all of Seller's rights, titles, and interests in and to all Personal Property owned or used in connection with the interests of Seller described in clause (a), clause (b), and clause (c), respectively, of this definition;

(e)     all of Seller's rights, titles, and interests in and to the Contracts and the Leases (other than the rights, titles, and interests of Seller set forth in clause (a) of this definition;

(f)     all of Seller's rights, titles, and interests in and to all Intangible Rights, insofar only as such Intangible Rights relate or are attributable to the items listed in this definition, pertain to Claims arising out of or resulting from acts, omissions, or events occurring after the Effective Time and do not constitute Excluded Assets; and

(g)     all of Seller's right, title, and interest in and to any funds in the Herkimer Escrow, but only to the extent not constituting a part of the Excluded Assets.

TO HAVE AND TO HOLD all and singular the Assets, together with all rights, titles, interests, estates, remedies, powers, and privileges thereto appertaining, unto Assignee and its successors and assigns forever, subject to the following:

1.     This Assignment is subject to that certain Asset Purchase and Sale Agreement dated effective as of the Effective Time, by and between the Parties (the "Purchase and Sale Agreement") and nothing in this Assignment shall operate to limit, release, or impair any

- 2 -

of Assignor's or Assignee's respective rights, obligations, remedies, or indemnities in the Purchase and Sale Agreement.  Furthermore, terms defined in the Purchase and Sale Agreement and used in this Assignment without definition have the respective meanings assigned to such terms in the Purchase and Sale Agreement.

2.      This Assignment shall extend to, be binding upon, and inure to the benefit of the Parties and their respective successors and assigns.

3.      Assignor agrees to warrant and defend title to the Assets against all claimants by, through, and under Assignor, but not otherwise, <u>subject</u>, <u>however</u>, to all matters of record as of the Effective Time, including certain of the Permitted Encumbrances (including Liens, other Claims and other encumbrances asserted or held by ZB, N.A. (formerly Amegy Bank National Association), as agent for the lenders under the Credit Agreement.

4.      **EXCEPT FOR THE SPECIAL WARRANTY OF TITLE SET FORTH IN THIS ASSIGNMENT AND THE REPRESENTATIONS AND WARRANTIES EXPRESSLY MADE BY ASSIGNOR IN THE PURCHASE AND SALE AGREEMENT, THE ASSETS ARE BEING CONVEYED BY ASSIGNOR TO ASSIGNEE WITHOUT WARRANTY OF ANY KIND, EXPRESS, IMPLIED, STATUTORY, AT COMMON LAW, OR OTHERWISE, AND THE PARTIES HEREBY EXPRESSLY DISCLAIM, WAIVE AND RELEASE ANY WARRANTY OF MERCHANTABILITY, CONDITION, SAFETY OR FITNESS FOR A PARTICULAR PURPOSE, AND ASSIGNEE ACCEPTS THE ASSETS "AS IS, WHERE IS, WITH ALL FAULTS, AND WITHOUT RECOURSE." ALL DESCRIPTIONS OF THE ASSETS HERETOFORE OR HEREAFTER FURNISHED TO ASSIGNEE BY ASSIGNOR HAVE BEEN AND SHALL BE FURNISHED SOLELY FOR ASSIGNEE'S CONVENIENCE, AND HAVE NOT CONSTITUTED, AND SHALL NOT CONSTITUTE, A REPRESENTATION OR WARRANTY OF ANY KIND BY ASSIGNOR.  ASSIGNOR SHALL HAVE NO LIABILITY TO ASSIGNEE FOR ANY CLAIMS CAUSED OR ALLEGED TO BE CAUSED, DIRECTLY, INDIRECTLY, INCIDENTALLY, OR CONSEQUENTIALLY, BY SUCH DESCRIPTIONS OF THE ASSETS, BY ANY INADEQUACY THEREOF OR THEREWITH, ARISING IN STRICT LIABILITY OR OTHERWISE, OR IN ANY WAY ARISING OUT OF ASSIGNEE'S PURCHASE THEREOF.  THE PARTIES HEREBY ACKNOWLEDGE AND AGREE THAT, TO THE EXTENT REQUIRED BY APPLICABLE LAW, THE DISCLAIMERS CONTAINED IN THIS ASSIGNMENT ARE "CONSPICUOUS" FOR THE PURPOSES OF SUCH APPLICABLE LAW.**

5.      The Exhibits to this Assignment are hereby incorporated by reference and constitute a part of this Assignment.

6.      Each defined term shall be equally applicable both to the singular and the plural forms of the term so defined.  To the extent the terms and provisions of this Assignment are in conflict, or inconsistent, with the terms and provisions of the Purchase and Sale Agreement, the terms and provisions of the Purchase and Sale Agreement shall control.

7.      This Assignment is effective as of 7:00 a.m., Eastern Standard Time, on December 1, 2016 (the "<u>Effective Time</u>").

8.     This Assignment may be executed in any number of counterparts, each of which shall be deemed valid and binding with respect to the signatories thereto, and all of which together shall constitute one and the same conveyance.

**(Signature and Acknowledgement pages follow)**

**(Balance of page intentionally left blank)**

- 4 -

IN WITNESS WHEREOF, the Parties have executed this Assignment to be effective for all purposes as of the Effective Time.

**<u>ASSIGNOR:</u>**

STRYKER ENERGY, LLC

By:_____

           John T. Young, Jr.
           Chief Operations Officer

Date signed:_____

<u>ACKNOWLEDGMENT</u>

THE STATE OF TEXAS      §
                                  §
COUNTY OF HARRIS      §

<u>New York</u>

On the ___ day of December, 2016, before me, the undersigned, personally appeared John T. Young, the Chief Operations Officer of Stryker Energy, LLC, an Ohio limited liability company, personally known to me or proved to me, on the basis of satisfactory evidence, to be the individual whose name is subscribed to the within instrument, and acknowledged to me that he executed the same in his capacity, and that, by his signature on the instrument, the individual, or person or entity on behalf of which the individual acted, executed the instrument.

<u>Ohio and Pennsylvania</u>

BEFORE ME, the undersigned authority, on this ___ day of December, 2016, personally appeared John T. Young, Jr., the Chief Operations Officer of Stryker Energy, LLC, an Ohio limited liability company, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed, in the capacity therein stated, and as the act and deed of such limited liability company.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

_____
Notary Public in and for
the State of Texas

Commission Expires:_____

**ASSIGNEE:**

NUCOMER ENERGY, LLC


By:_____
      Stephen D. Keyes
      President

Date signed:_____


ACKNOWLEDGMENT

| | |
|---|---|
| THE STATE OF PENNSYLVANIA | § |
| | § |
| COUNTY OF ERIE | § |

New York

    On the \_\_\_ day of December, 2016, before me, the undersigned, personally appeared Stephen D. Keyes, the President of Nucomer Energy, LLC, a Pennsylvania limited liability company, personally known to me or proved to me, on the basis of satisfactory evidence, to be the individual whose name is subscribed to the within instrument, and acknowledged to me that he executed the same in his capacity, and that, by his signature on the instrument, the individual, or person or entity on behalf of which the individual acted, executed the instrument.

Ohio and Pennsylvania

    This instrument was acknowledged before me this \_\_\_\_ day of December, 2016, by Stephen D. Keyes, known to me, the President of Nucomer Energy, LLC, a Pennsylvania limited liability company, who affirmed that this instrument was signed on behalf of such limited liability company and that the execution of this instrument was the free act and deed of such limited liability company.


_____
Notary Public in and for
the State of Pennsylvania

Commission Expires:_____

<u>Exhibit A</u>

<u>Leases and Wells; Units</u>

**(See following Exhibit A-1)**

**(Balance of page intentionally left blank)**

Exhibit A

Exhibit A-1

**(See following pages)**

**(Balance of page intentionally left blank)**

## LEASES

Those Oil and Gas Leases or Oil, Gas and Mineral Leases which are listed below or which are the subject of the Partial Assignments of Oil and Gas Leases listed below.

| Lessor Name & Address | Oil and Gas Lease | Parcel Number | Partial Assignment |
|---|---|---|---|
| Marie A. Abood<br>14365 Cedar Rd.<br>South Euclid, OH 44121 | 2004-017697 | 31-054-117-002 | 2012-00011497 |
| Mark A. & Susan L. Black<br>8466 Summit Rd.<br>Transfer, PA. 16154 | 2004-017694 | 28-080-033 | 2012-00011494 |
| Jay and Kimberly Bonadio<br>314 Shenango Park Road<br>Transfer, PA 16154 | 2010-00011253 | 23-094-0289 | 2012-00011496 |
| Raymond & Patricia J. Brest Jr.<br>119 Hilltop Rd.<br>Greenville, PA 16125 | 2003-015212 | 31-067-008 | 2012-00011490 |
| Gifford Bridenbaugh , et al<br>182 S. Barry Rd.<br>Greenville PA 16125 | 2005-008978 | 31-066-018 | 2012-00011489 |
| Paul & Connie M. Cordell<br>111 South Marysville Rd.<br>Greenville PA 16125 | 2005-00012477 | 31-054-120<br>31-054-121 | 2012-00011493 |
| William A. & Sophie Cusick<br>110 Stateline Rd.<br>Greenville PA 16125 | 2010-00008406<br>**RE-RECORDED**<br>**2011-00002047** | 31-066-027 | 2012-00011508 |
| Samuel E. & Tina M. Dailey<br>331 Coal Hill Rd.<br>Greenville PA 16125 | 2003-015219<br>2011-00002046 | 31-068-063<br>31-068-041-003 | 2012-00016013 |
| Jerry W. & Patricia N. Diehl<br>2907 Carlisle Rd.<br>Transfer PA 16125 | 2003-018689 | 28-080-020 | 2012-00011495 |
| Michael Dorfi, et al<br>2959 Frampton Rd.<br>Hermitage PA 16148 | 2003-018691 | 31-080-003 | 2012-00011498 |
| Michael Dorfi, et al<br>2959 Frampton Rd.<br>Hermitage PA 16148 | 2003-018691 | 31-080-003 | 2012-00011505 |
| Michael Dorfi, et al<br>2959 Frampton Rd.<br>Hermitage PA 16148 | 2003-018691 | 31-080-003 | 2012-00011506 |
| Ronald L. & Linda D. Ealy<br>423 S. Marysville Rd.<br>Greenville PA 16125 | 2003-015214 | 31-068-033 | 2012-00011499 |
| Ronald L. & Linda D. Ealy<br>423 S. Marysville Rd.<br>Greenville PA 16125 | 2003-015214 | 31-068-033 | 2012-00011504 |
| Gary L. & Pamela J. Hanson<br>796 Vernon Rd.<br>Greenville PA 16125 | 2004-000094<br>2004-000098<br>2004-000099 | 31-054-061-001<br>31-054-040<br>31-054-117-001 | 2012-00011500 |

Exhibit A-1-i

| | | | |
|---|---|---|---|
| Lucille Hawkins<br>220 S. Good Hope Rd.<br>Greenville Rd. 16125 | 2003-15216 | 31-068-040 | 2012-00011501 |
| Kenneth and Anne Hockett<br>125 Bassick Lane<br>Transfer, PA 16154 | 2011-00003635 | 23-081-030 | 2012-00011491 |
| Kenneth and Anne Hockett<br>125 Bassick Lane<br>Transfer, PA 16154 | 2011-00003635 | 23-081-030 | 2012-00011492 |
| Kenneth and Anne Hockett<br>125 Bassick Lane<br>Transfer, PA 16154 | 2011-00003635 | 23-081-030 | 2012-00011507 |
| Sandra Holbrook , et al<br>94 Church Road<br>Greenville, PA 16125 | 2010-00010127 | 31-054-082 | 2012-00011503 |
| William Kettering<br>351 Orangeville Rd<br>Greenville PA 16125 | 2003-15211 | 31-068-001 | 2012-00011502 |
| Ronald Kirila , et al<br>505 Bedford Rd.<br>Brookfield OH 44403 | 2003-018688 | 31-066-005 | 2012-00013763 |
| Ronald Kirila , et al<br>505 Bedford Rd.<br>Brookfield OH 44403 | 2003-018688 | 31-066-005 | 2012-00013752 |
| Stephen R. Lenkner, et al<br>260 Orangeville Road<br>Greenville, PA 16125 | 2011-00001347 | 31-055-209<br>31-055-225 | 2012-00013751 |
| Stephen R. Lenkner, et al<br>260 Orangeville Road<br>Greenville, PA 16125 | 2011-00001347 | 31-055-209<br>31-055-225 | 2012-00013750 |
| Charles Loutzenhiser<br>31 Hilltop Road<br>Greenville, PA 16125 | 2003-018687 | 31-054-069 | 2012-00013758 |
| Ronald E. Matters<br>2019 Carlisle Road<br>Greenville, PA 16125 | 2010-00011254 | 28-080-006 | 2012-00013762 |
| Lloyd and Theresa McGarvey<br>30 Hickory Road<br>Greenville, PA 16125 | 2011-00003633 | 31-054-012 | 2012-00013757 |
| Richard & Tammy Miklos Sr.<br>1163 Darian Rd.<br>Greenville PA 16125 | 2003-018973 | 31-066-038<br>28-079-005 | 2012-00013756 |
| Richard & Tammy Miklos Sr.<br>1163 Darian Rd.<br>Greenville PA 16125 | 2010-00009761 | 28-079-002 | 2012-00013760 |
| James A. Mischick<br>3900 Fran Lane<br>Hermitage PA 16148 | 2003-018974<br>2003-018683 | 31-067-057<br>31-067-064 | 2012-00013755 |
| Wallace J. & Barbara J. Phillips<br>6048 Beach Smith Rd.<br>Kinsman OH 44428 | 2007-00001199 | 31-053-039 | 2012-00013754 |

Exhibit A-1-ii

| | | | |
|---|---|---|---|
| Susan C. Rea<br>(part of Russo well)<br>156 S. Stateline Road<br>Greenvile, PA 16125 | 2010-00009758 | 31-066-036<br>31-066-037 | 2012-00013753 |
| Susan C. Rea<br>(part of Russo well)<br>156 S. Stateline Road<br>Greenvile, PA 16125 | 2010-00009758 | 31-066-036<br>31-066-037 | 2012-00013759 |
| Daniel L. & Donna N. Reeher<br>163 Summit Rd.<br>Greenville PA 16125 | 2004-000093 | 31-067-048<br>31-067-047 | 2012-00013761 |
| Daniel L. & Donna N. Reeher<br>163 Summit Rd.<br>Greenville PA 16125 | 2004-000093 | 31-067-048<br>31-067-047 | 2012-00013764 |
| Terry Reeher<br>127 S. Summit Rd.<br>Greenville PA 16125 | 2001-018132 | 31-067-028 | 2012-00016158 |
| Dennis D. & Lucia J. Reynolds<br>12 West Dr.<br>Greenville PA 16125 | 2003-018684 | 31-055-200-001 | 2012-00016143 |
| Henry & Ruth Sewinsky Jr.<br>45 Coulter Rd.<br>Greenville PA 16125 | 2005-8975 | 31-080-001 | 2012-00016147 |
| Henry & Ruth Sewinsky Jr.<br>45 Coulter Rd.<br>Greenville PA 16125 | 2005-8975 | 31-080-001 | 2012-00016141 |
| James and Ethel Slater<br>482 Coal Hill Road<br>Greenville, PA 16125 | 2011-00003634 | 31-068-086 | 2012-00016148 |
| Magdolna Soros<br>70 Hilltop Rd.<br>Greenville PA 16125 | 2010-00008408 | 31-054-117 | 2012-00016011 |
| Robert L. Stein<br>4950 Tamarack Dr.<br>Sharpsville, PA. 16150 | 2010-00010128 | 28-105-064<br>28-105-065.001.000 | 2012-00016149 |
| Frank and Myrna Thompson<br>6954 Main Street<br>Hartstown, PA 16131 | 2004-017693 | 31-066-030 | 2012-00016150 |
| Gino and MaryAnn Tofani<br>1451 Rutledge Road<br>Transfer, PA 16154 | 2010-00011249 | 23-093-019 | 2012-00016151 |
| Gino and MaryAnn Tofani<br>1451 Rutledge Road<br>Transfer, PA 16154 | 2011-00000889 | 23-108-009 | 2012-00016152 |
| William & Patricia Tupper<br>319 S. Maysville Rd.<br>Transfer, PA. 16154 | 2010-00010123 | 23-081-005 | 2012-00016157 |
| Henry and Susan VanZanten<br>4928 Tamarac Drive<br>Sharpsville, PA 16154 | 2010-00011252 | 28-105-084<br>28-105-084-001.000 | 2012-00016016 |

Exhibit A-1-iii

| | | | |
|---|---|---|---|
| Henry and Susan VanZanten<br>4928 Tamarac Drive<br>Sharpsville, PA 16154 | 2010-00011252 | 28-105-084<br>28-105-084-001.000 | 2012-00016156 |
| Henry and Susan VanZanten<br>4928 Tamarac Drive<br>Sharpsville, PA 16154 | 2010-00011252 | 28-105-084<br>28-105-084-001.000 | 2012-00016153 |
| Henry and Susan VanZanten<br>4928 Tamarac Drive<br>Sharpsville, PA 16154 | 2010-00011252 | 28-105-084<br>28-105-084-001.000 | 2012-00016155 |
| Raymond W. & JoAnn L. Werger<br>245 Coal Hill Rd.<br>Greenville PA 16125 | 2003-018977 | 31-068-012<br>31-068-015<br>31-068-016<br>31-068-028 | 2012-00016146 |
| Raymond W. & JoAnn L. Werger<br>245 Coal Hill Rd.<br>Greenville PA 16125 | 2003-018977 | 31-068-012<br>31-068-015<br>31-068-016<br>31-068-028 | 2012-00016154 |
| Howard E. Derr<br>R.D. #1<br>Transfer PA 16154 | 2003-025780 | 28-080-XXX | 2012-00016015 |
| Gerald A. & Mary E. Jones, Jr.<br>1017 Hilltop Rd.<br>Greenville PA 16125 | 2003-015866 | 31-XX-XXX | 2012-00016012 |
| Ronald Kirila<br>79 S. Stateline Rd.<br>Greenville PA 16125 | 2004-002040 | 31-066-12 | 2012-00016145 |
| Jeff Knauff | 2003-018972 | | 2013-00000179 |
| Paul & Connie M. Cordell<br>111 South Marysville Rd.<br>Greenville PA 16125 | 2005-00012477 | 31-054-120<br>31-054-121 | 2013-00000194 |
| William A. & Sophie Cusick<br>110 Stateline Rd.<br>Greenville PA 16125 | 2010-00008406<br>**RE-RECORDED**<br>**2011-00002047** | 31-066-027 | 2013-00000192 |
| William A. & Sophie Cusick<br>110 Stateline Rd.<br>Greenville PA 16125 | 2010-00008406<br>**RE-RECORDED**<br>**2011-00002047** | 31-066-027 | 2013-00000188 |
| Michael Dorfi, et al<br>2959 Frampton Rd.<br>Hermitage PA 16148 | 2003-018691 | 31-080-003 | 2013-00000210 |
| Michael Dorfi, et al<br>2959 Frampton Rd.<br>Hermitage PA 16148 | 2003-018691 | 31-080-003 | 2013-00000209 |
| Michael Dorfi, et al<br>2959 Frampton Rd.<br>Hermitage PA 16148 | 2003-018691 | 31-080-003 | 2013-00000208 |
| Ronald L. & Linda D. Ealy<br>423 S. Marysville Rd.<br>Greenville PA 16125 | 2003-015214 | 31-068-033 | 2013-00000189 |
| Lucille Hawkins<br>220 S. Good Hope Rd.<br>Greenville Rd. 16125 | 2003-15216 | 31-068-040 | 2013-00000174 |

Exhibit A-1-iv

| | | | |
|---|---|---|---|
| Charles Loutzenhiser<br>31 Hilltop Road<br>Greenville, PA 16125 | 2003-018687 | 31-054-069 | 2013-00000193 |
| Ronald E. Matters<br>2019 Carlisle Road<br>Greenville, PA 16125 | 2010-00011254 | 28-080-006 | 2013-00000184 |
| Ronald E. Matters<br>2019 Carlisle Road<br>Greenville, PA 16125 | 2010-00011254 | 28-080-006 | 2013-00000183 |
| Ronald E. Matters<br>2019 Carlisle Road<br>Greenville, PA 16125 | 2010-00011254 | 28-080-006 | 2013-00000182 |
| Richard & Tammy Miklos Sr.<br>1163 Darian Rd.<br>Greenville PA 16125 | 2003-018973 | 31-066-038<br>28-079-005 | 2013-00000181 |
| Richard & Tammy Miklos Sr.<br>1163 Darian Rd.<br>Greenville PA 16125 | 2003-018973 | 31-066-038<br>28-079-005 | 2013-00000180 |
| Richard & Tammy Miklos Sr.<br>1163 Darian Rd.<br>Greenville PA 16125 | 2003-018973 | 31-066-038<br>28-079-005 | 2013-00000178 |
| Richard & Tammy Miklos Sr.<br>1163 Darian Rd.<br>Greenville PA 16125 | 2003-018973 | 31-066-038<br>28-079-005 | 2013-00000186 |
| Richard & Tammy Miklos Sr.<br>1163 Darian Rd.<br>Greenville PA 16125 | 2003-018973 | 31-066-038<br>28-079-005 | 2013-00000177 |
| James A. Mischick<br>3900 Fran Lane<br>Hermitage PA 16148 | 2003-018974<br>2003-018683 | 31-067-057<br>31-067-064 | 2013-00000202 |
| James A. Mischick<br>3900 Fran Lane<br>Hermitage PA 16148 | 2003-018974<br>2003-018683 | 31-067-057<br>31-067-064 | 2013-00000190 |
| Susan C. Rea<br>(part of Russo well)<br>156 S. Stateline Road<br>Greenvile, PA 16125 | 2010-00009758 | 31-066-036<br>31-066-037 | 2013-00000191 |
| Susan C. Rea<br>(part of Russo well)<br>156 S. Stateline Road<br>Greenvile, PA 16125 | 2010-00009758 | 31-066-036<br>31-066-037 | 2013-00000203 |
| Daniel L. & Donna N. Reeher<br>163 Summit Rd.<br>Greenville PA 16125 | 2004-000093 | 31-067-048<br>31-067-047 | 2013-00000187 |
| Daniel L. & Donna N. Reeher<br>163 Summit Rd.<br>Greenville PA 16125 | 2004-000093 | 31-067-048<br>31-067-047 | 2013-00000206 |
| Henry & Ruth Sewinsky Jr.<br>45 Coulter Rd.<br>Greenville PA 16125 | 2005-8975 | 31-080-001 | 2013-00000201 |

Exhibit A-1-v

| | | | |
|---|---|---|---|
| Magdolna Soros<br>70 Hilltop Rd.<br>Greenville PA 16125 | 2010-00008408 | 31-054-117 | 2013-00000200 |
| Henry and Susan VanZanten<br>4928 Tamarac Drive<br>Sharpsville, PA 16154 | 2010-00011252 | 28-105-084<br>28-105-084-001.000 | 2013-00000198 |
| Raymond W. & JoAnn L. Werger<br>245 Coal Hill Rd.<br>Greenville PA 16125 | 2003-018977 | 31-068-012<br>31-068-015<br>31-068-016<br>31-068-028 | 2013-00000199 |
| Raymond W. & JoAnn L. Werger<br>245 Coal Hill Rd.<br>Greenville PA 16125 | 2003-018977 | 31-068-012<br>31-068-015<br>31-068-016<br>31-068-028 | 2013-00000197 |
| Raymond W. & JoAnn L. Werger<br>245 Coal Hill Rd.<br>Greenville PA 16125 | 2003-018977 | 31-068-012<br>31-068-015<br>31-068-016<br>31-068-028 | 2013-00000176 |
| Raymond W. & JoAnn L. Werger<br>245 Coal Hill Rd.<br>Greenville PA 16125 | 2003-018977 | 31-068-012<br>31-068-015<br>31-068-016<br>31-068-028 | 2013-00000175 |
| Howard E. Derr<br>R.D. #1<br>Transfer PA 16154 | 2003-025780 | 28-080-XXX | 2013-00000195 |
| Howard E. Derr<br>R.D. #1<br>Transfer PA 16154 | 2003-025780 | 28-080-XXX | 2013-00000185 |
| Gerald A. & Mary E. Jones, Jr.<br>1017 Hilltop Rd.<br>Greenville PA 16125 | 2003-015866 | 31-XX-XXX | 2013-00000196 |

INSOFAR AND ONLY INSOFAR as rights under any of such Oil and Gas Leases or Oil, Gas and Mineral Leases relate to the wells or wellbores listed on the following pages Exhibit A-1-vii through and including Exhibit A-1-xiii.


**(Balance of page intentionally left blank)**


Exhibit A-1-vi

## WELLS

# Nucomer - Stryker Well Exhibit - REVISED 11/1/16 FOR AMEGY

## Jamestown Wells - 42 Wells

| API # | Well Name | Field | Reservior | State | County | Town |
|---|---|---|---|---|---|---|
| 31-013-27550-00 | Bower #1 | Jamestown | Medina | NY | Chautauqua | Gerry |
| 31-013-25051-00 | Dean #1 | Jamestown | Medina | NY | Chautauqua | Gerry |
| 31-013-24920-00 | Erickson #1 | Jamestown | Medina | NY | Chautauqua | Harmony |
| 31-013-25489-00 | FSA #1 | Jamestown | Medina | NY | Chautauqua | Portland |
| 31-013-25490-00 | FSA #2 | Jamestown | Medina | NY | Chautauqua | Portland |
| 31-009-25971-00 | Hanson-Ivett | Jamestown | Medina | NY | Cattaraugus | Dayton |
| 31-009-27549-00 | Hanson-Ivett #2 | Jamestown | Medina | NY | Cattaraugus | Dayton |
| 37-123-43997-00 | Hitchcock #1 (PA) | Jamestown | Medina | PA | Warren | Farmington |
| 31-013-24058-00 | Hitchcock, G. | Jamestown | Medina | NY | Chautauqua | Busti |
| 31-013-24150-00 | Jackson #1A | Jamestown | Medina | NY | Chautauqua | Carroll |
| 31-013-25532-00 | Johnson #3 | Jamestown | Medina | NY | Chautauqua | Gerry |
| 31-013-24061-00 | Johnson, H. #2 | Jamestown | Medina | NY | Chautauqua | Kaintone |
| 31-013-24273-00 | Kane #1 | Jamestown | Medina | NY | Chautauqua | Carroll |
| 31-013-25127-00 | Kidder #1 | Jamestown | Medina | NY | Chautauqua | Busti |
| 31-013-24778-00 | Kidder #4 | Jamestown | Medina | NY | Chautauqua | Busti |
| 31-013-24804-00 | King #1 | Jamestown | Medina | NY | Chautauqua | Gerry |
| 31-013-24096-00 | Labarte #3 | Jamestown | Medina | NY | Chautauqua | Busti |
| 37-123-44604-00 | Larson #1 | Jamestown | Medina | PA | Warren | Farmington |
| 37-123-45562-00 | Lauger #1 | Jamestown | Medina | PA | Warren | Freehold |
| 31-013-24075-00 | Marsh #1 | Jamestown | Medina | NY | Chautauqua | Poland |
| 31-013-24062-00 | Mee #3 | Jamestown | Medina | NY | Chautauqua | Poland |
| 31-013-27554-00 | Meeder, R. #1 | Jamestown | Medina | NY | Chautauqua | Ripley |
| 37-123-45561-00 | Morrison #1 | Jamestown | Medina | PA | Warren | Pine Grove[1] |
| 31-013-24856-00 | O'Dell #1 | Jamestown | Medina | NY | Chautauqua | Harmony |

[1] Was listed under Mercer on original paperwork

Exhibit A-1-vii

| API # | Well Name | Field | Reservior | State | County | Town |
|---|---|---|---|---|---|---|
| 31-013-25047-00 | Parker #1 | Jamestown | Medina | NY | Chautauqua | Gerry |
| 31-013-25055-00 | Parker #2 | Jamestown | Medina | NY | Chautauqua | Gerry |
| 31-013-25637-00 | Russo #1 | Jamestown | Medina | NY | Chautauqua | Portland |
| 31-013-25046-00 | Scott #2 | Jamestown | Medina | NY | Chautauqua | Chautauqua |
| 31-013-24086-00 | Searscrest #3 | Jamestown | Medina | NY | Chautauqua | Poland |
| 31-013-24087-00 | Searscrest #4 | Jamestown | Medina | NY | Chautauqua | Poland |
| 37-123-44981-00 | Swanson #1 (PA) | Jamestown | Medina | PA | Warren | Pine Grove |
| 31-013-27746-00 | Swanson Tree Farm | Jamestown | Medina | NY | Chautauqua | Gerry |
| 31-013-24803-00 | Swanson, M. #1 | Jamestown | Medina | NY | Chautauqua | Gerry |
| 31-013-25468-00 | Swanson, M. #2 | Jamestown | Medina | NY | Chautauqua | Gerry |
| 31-013-25469-00 | Swanson, M. #3 | Jamestown | Medina | NY | Chautauqua | Gerry |
| 31-013-27541-00 | Swanson, M. #4 | Jamestown | Medina | NY | Chautauqua | Gerry |
| 37-123-44547-00 | Sweeney #2 | Jamestown | Medina | PA | Warren | Farmington |
| 31-013-24097-00 | Ulrich #1 | Jamestown | Medina | NY | Chautauqua | Carroll |
| 37-123-44635-00 | Vanco #3 | Jamestown | Medina | PA | Warren | Freehold |
| 37-123-44971-00 | Wilson #1 | Jamestown | Medina | PA | Warren | Freehold |
| 37-123-44546-00 | Youngberg #1 | Jamestown | Medina | PA | Warren | Farmington |
| 31-013-25048-00 | Youngberg (NY) | Jamestown | Medina | NY | Chautauqua | Carroll |

**42**

## Linesville Wells - 13 Wells

| API # | Well Name | Field | Reservior | State | County | Town |
|---|---|---|---|---|---|---|
| 37-039-25171-00 | Brown, R. #1 | Linesville | Medina | PA | Crawford | Conneaut |
| 37-039-24984-00 | Cervi #1 | Linesville | Medina | PA | Crawford | Conneaut |
| 37-039-24986-00 | Davis, J. #1 | Linesville | Medina | PA | Crawford | Pine |
| 37-039-25149-00 | Graham, D. #1 | Linesville | Medina | PA | Crawford | Conneaut |
| 37-039-24982-00 | Grumet #1 | Linesville | Medina | PA | Crawford | Conneaut |
| 37-039-25150-00 | Hackworth, A #1 | Linesville | Medina | PA | Crawford | Conneaut |
| 37-039-24981-00 | Hackworth, J #1 | Linesville | Medina | PA | Crawford | Conneaut |

Exhibit A-1-viii

| 37-039-24989-00 | Holeshot #1 | Linesville | Medina | PA | Crawford | Conneaut |
| 37-039-25115-00 | Oates #1 | Linesville | Medina | PA | Crawford | Conneaut |
| 37-039-24983-00 | Stewart, J. #1 | Linesville | Medina | PA | Crawford | Pine |
| 37-039-25170-00 | Troup #1 | Linesville | Medina | PA | Crawford | Conneaut |
| 37-039-25276-00 | Uzarski #1 | Linesville | Medina | PA | Crawford | Conneaut |
| 37-039-24969-00 | Weaver #1 | Linesville | Medina | PA | Crawford | Conneaut |

**13**

## Mercer Wells - 94 Wells

| API # | Well Name | Field | Reservior | State | County | Town |
| --- | --- | --- | --- | --- | --- | --- |
| 37-085-23891-00 | Abood #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23755-00 | Black #1 | Mercer | Medina | PA | Mercer | So. Pymatuning |
| 37-085-24013-00 | Brest #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23854-00 | Bridenbaugh #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24317-00 | Brockway #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23985-00 | Brockway #2 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23842-00 | Brown #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23888-00 | Brown #2 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24223-00 | Brumbaugh #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24224-00 | Brumbaugh #2 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24011-00 | Cordell #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24338-00 | Cordell #2 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24093-00 | Coryea #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24340-00 | Dailey #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24341-00 | DePofi #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24275-00 | Derr #1 | Mercer | Medina | PA | Mercer | So. Pymatuning |
| 37-085-24301-00 | Derr #2 | Mercer | Medina | PA | Mercer | So. Pymatuning |
| 37-085-23696-00 | Diehl #1 | Mercer | Medina | PA | Mercer | So. Pymatuning |
| 37-085-23694-00 | Dorfi #1 | Mercer | Medina | PA | Mercer | West Salem |

Exhibit A-1-ix

| | | | | | | |
|---|---|---|---|---|---|---|
| 37-085-23974-00 | Dorfi #2 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24403-00 | Dorfi #3 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23866-00 | Hanson #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24304-00 | Hanson #2 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23871-00 | Hanson #3 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24339-00 | Hawkins #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24162-00 | Hawkins #2 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24065-00 | Homer #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24276-00 | Jones #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23855-00 | Kantner | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24073-00 | Kettering #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24274-00 | Kettering, G. #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24326-00 | Kirila #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23892-00 | Kirila #2 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24005-00 | Kirila #3 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24104-00 | Kirkland #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23698-00 | Knauff #1 | Mercer | Medina | PA | Mercer | So. Pymatuning |
| 37-085-24010-00 | Knauff #2 | Mercer | Medina | PA | Mercer | So. Pymatuning |
| 37-085-24108-00 | Kosnac #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24042-00 | Leonard #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24277-00 | Leskovac #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23775-00 | Loutzenhiser #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23787-00 | Luplow #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24539-00 | McClimans #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23844-00 | Miklos #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23845-00 | Miklos #2 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24006-00 | Miklos #3 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24077-00 | Miklos #4 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24536-00 | Miller, L. #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23983-00 | Miodrag #1 | Mercer | Medina | PA | Mercer | So. Pymatuning |

Exhibit A-1-x

| | | | | | | |
|---|---|---|---|---|---|---|
| 37-085-23984-00 | Miodrag #2 | Mercer | Medina | PA | Mercer | So. Pymatuning |
| 37-085-23801-00 | Mischick #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23867-00 | Mischick #2 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23889-00 | Mohr #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23798-00 | Mong #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24161-00 | Morrison #1 (NY) | Mercer | Medina | PA | Mercer | West Salem[2] |
| 37-085-24169-00 | Morrison #2 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23916-00 | Moser #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24036-00 | Mott #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24163-00 | Murrin #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24066-00 | Myers #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23853-00 | Palm #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23822-00 | Raiti, C #2 | Mercer | Medina | PA | Mercer | So. Pymatuning |
| 37-085-23823-00 | Raiti, C #3 | Mercer | Medina | PA | Mercer | So. Pymatuning |
| 37-085-23788-00 | Raiti, F #1 | Mercer | Medina | PA | Mercer | So. Pymatuning |
| 37-085-23872-00 | Raiti, F #2 | Mercer | Medina | PA | Mercer | So. Pymatuning |
| 37-085-24043-00 | Raiti, F #3 | Mercer | Medina | PA | Mercer | So. Pymatuning |
| 37-085-24099-00 | Redfoot #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23774-00 | Reeher, D #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24316-00 | Reeher, D #2 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23817-00 | Reeher, T #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24007-00 | Reeher, T #2 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24067-00 | Reynolds, D #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24100-00 | Reynolds, R #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23799-00 | Ross #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23782-00 | Sewinsky #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24160-00 | Slovinsky #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24535-00 | Soros #1 | Mercer | Medina | PA | Mercer | West Salem |

---

[2] Was listed under Jamestown on original paperwork

Exhibit A-1-xi

| API # | Well Name | Field | Reservior | State | County | Town |
|---|---|---|---|---|---|---|
| 37-085-23908-00 | Stanton #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23804-00 | Sump, C #1 | Mercer | Medina | PA | Mercer | So. Pymatuning |
| 37-085-23986-00 | Sump, H #1 | Mercer | Medina | PA | Mercer | So. Pymatuning |
| 37-085-24069-00 | Sump, R #1 | Mercer | Medina | PA | Mercer | So. Pymatuning |
| 37-085-23759-00 | Taylor #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23779-00 | Taylor #2 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23856-00 | Tomon #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23884-00 | Werger #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24315-00 | Werger #2 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24072-00 | Werger #3 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23691-00 | Woods, J #1 | Mercer | Medina | PA | Mercer | Pymatuning |
| 37-085-23697-00 | Woods, T #1 | Mercer | Medina | PA | Mercer | Pymatuning |
| 37-085-23749-00 | Woods, T #2 | Mercer | Medina | PA | Mercer | So. Pymatuning |
| 37-085-23994-00 | Yoder #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24159-00 | Yoder #2 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-23843-00 | Zimnicki #1 | Mercer | Medina | PA | Mercer | West Salem |
| 37-085-24337-00 | Zimnicki #2 | Mercer | Medina | PA | Mercer | West Salem |

**94**

## Trumbull Wells - 7 Wells

| API # | Well Name | Field | Reservior | State | County | Town |
|---|---|---|---|---|---|---|
| 34-155-2-4009-00 | Lee #1 | Trumbull | Medina | OH | Trumbull | Vernon |
| 34-155-2-3831-00 | Mahaffey #1 | Trumbull | Medina | OH | Trumbull | Vernon |
| 34-155-2-3893-00 | Mahaffey #2 | Trumbull | Medina | OH | Trumbull | Vernon |
| 34-155-2-3917-00 | Paroz #1 | Trumbull | Medina | OH | Trumbull | Hartford |
| 34-155-2-3935-00 | Pelton #1 | Trumbull | Medina | OH | Trumbull | Vernon |
| 34-155-2-4008-00 | Riffe #1 | Trumbull | Medina | OH | Trumbull | Vernon |
| 34-155-2-3884-00 | Saum #1 | Trumbull | Medina | OH | Trumbull | Vernon |

Exhibit A-1-xii

**7**

**Herkimer Wells - 5 Wells**

| | | Field | Reservior | State | County | Town |
|---|---|---|---|---|---|---|
| 31-017-26438-00 | Davis, K #1H | Herkimer | Herkimer | NY | Chenango | Smyrna |
| 31-053-26478-00 | DiSciascio #1H | Herkimer | Herkimer | NY | Madison | Lebanon |
| 31-017-26480-00 | Morse #1H | Herkimer | Herkimer | NY | Chenango | Smyrna |
| 31-017-26477-00 | Smyrna Hillbillies #6H | Herkimer | Herkimer | NY | Chenango | Smyrna |
| 31-017-26476-00 | Sweezy, J. #2H | Herkimer | Herkimer | NY | Chenango | Smyrna |

**5**

**161**     **Grand Total Wells**

Exhibit A-1-xiii

# UNITS

None.

17101809v.3